**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd. Suite 1121
Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

*Attorneys for Plaintiff & the Putative Classes*

[*additional counsel on signature page*]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBECCA HICKEY, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>FUTURHEALTH, INC.,<br><br>Defendant. | Case No. 3:25-cv-03051-H-DDL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**<br><br>Date: April 13, 2026<br>Time: 10:30 A.M.<br>Place: Courtroom 12a<br>Judge: Hon. Marilyn L. Huff<br><br>Case Filed: November 7, 2025 |

# TABLE OF CONTENTS


PAGE (S)

INTRODUCTION .......... 8

FACTUAL BACKGROUND .......... 10

LEGAL STANDARDS .......... 11

ARGUMENT .......... 11

A. Plaintiff Has Article III Standing. .......... 11

1. Disclosure of Medical Information Is Highly Offensive. .......... 11

2. Plaintiff Did Not Voluntarily Provide Her PHI to Taboola. .......... 13

B. Plaintiff States Plausible Claims Under Each Cause of Action .......... 14

1. CIPA § 631 – FuturHealth Aided Taboola's Interception. .......... 14

2. CIPA § 632 – Health-Related Communications Are Confidential. .......... 16

3. ECPA – FuturHealth's Criminal or Tortious Purpose is Not Defeated Because Defendant Also Sought to Make Money. .......... 17

4. NYDTPA – FuturHealth's Omission of its Surreptitious Disclosure to Taboola was Materially Misleading. .......... 19

5. Unjust Enrichment – Retained Benefits Should be Disgorged. .......... 20

C. The Motion to Compel Should be Denied. .......... 21

1. No Agreement to Arbitrate Was Formed. .......... 22

2. FuturHealth Did Not Provide Sufficient Notice of Arbitration. .......... 24

a. Defendant's Deemphasized Hyperlinks are Inconspicuous. .......... 26

b. Plaintiff Did Not Unambiguously Manifest Her Assent. .......... 29

3. The Advisal Purports to Obtain Assent Via Fraud. .......... 29

4. No Stay is Warranted Because This Case is Not Arbitrable. .......... 31

CONCLUSION .......... 31

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.J. v. LMND Med. Grp., Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) .......................................19, 20, 21

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ..................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................11

*Baton v. Ledger,*
740 F. Supp. 3d 847 (N.D. Cal. 2024) ............................................................20

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................................................................*passim*

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................................16, 17

*Chabolla v. ClassPass, Inc.*,
129 F.4th 1147 (9th Cir. 2025) .................................................................24, 25

*Chabolla v. ClassPass, Inc.*,
2023 WL 4544598 (N.D. Cal. June 22, 2023) ................................................28

*Circuit City Stores, Inc. v. Adams*,
279 F.3d 889 (9th Cir. 2002) ..........................................................................31

*Cooper v. Mount Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024) ....................................17, 19, 20

*Dawson v. Target Corp.*,
2025 WL 1651940 (N.D. Cal. June 11, 2025) ................................................24

*DKS, Inc. v. Corp. Bus. Sols., Inc.*,
675 F. App'x 738 (9th Cir. 2017) ...............................................................29, 30

*DKS, Inc. v. Corp. Bus. Sols., Inc.*,
2015 WL 4645346 (E.D. Cal. Aug. 4, 2015) ..................................................30

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. Jul. 25, 2025) ....................................16, 19, 20, 21

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)............................................................21

*Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*,
2025 WL 2781542 (D. Md. Sept. 30, 2025).......................................................12

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .........................................................17, 18

*Duick v. Toyota Motor Sales, U.S.A., Inc.*,
198 Cal.App.4th 1316 (2011) ..........................................................................30

*Farmer v. BarkBox, Inc.*,
2023 WL 8522984 (C.D. Cal. Oct. 6, 2023) ......................................................28

*Ford v. Shearson Lehman Am. Express, Inc.*,
180 Cal. App. 3d 1011 (Ct. App. 1986) ............................................................30

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025)...............................................12, 14

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025)......................................................................25, 29

*In re Ambry Genetics*,
567 F.Supp.3d 1130 (C.D. Cal. 2021)...............................................................12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ......................................................................13, 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)........................................................13, 16

*In re Stubhub Refund Litig.*,
2021 WL 5447006 (N.D. Cal. Nov. 22, 2021)....................................................24

*In re Unite Here Data Security Litigation*,
740 F.Supp.3d 364 (S.D.N.Y. 2024) .................................................................20

*Ireland-Gordy v. Tile, Inc.*,
2024 WL 5162413 (N.D. Cal. Dec. 19, 2024) ....................................................22

*James v. Allstate Insurance Company*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 13

*Javier v. Assurance IQ, LLC*,
649 F.Supp.3d 891 (N.D. Cal. 2023) .......... 14

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024) .......... 17

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 19

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) .......... 14, 21

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 17, 18

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
845 F.3d 979 (9th Cir. 2017) .......... 21

*Lopez v. Dave Inc.*,
2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) .......... 24

*Lopez v. Dave, Inc.*,
2023 WL 8594393 (9th Cir. Dec. 12, 2023) .......... 22, 25, 27

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 31

*Luna v. Household Fin. Corp. III*,
236 F. Supp. 2d 1166 (W.D. Wash. 2002) .......... 31

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 16

*Mlejnecky v. Olympus Imaging Am., Inc.*,
2011 WL 489743 (E.D. Cal. Feb. 7, 2011) .......... 31

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 24

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .......... 19

*Plata v. Lands' End, Inc.*,
2024 WL 5339858 (C.D. Cal. Dec. 19, 2024) .......... 27

*Platt v. Sodexo, S.A.*,
148 F.4th 709 (9th Cir. 2025) .......... 22

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) .......... 11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 18, 21

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 17, 18

*Rice v. Dean Witter Reynolds, Inc.*,
235 Cal.App.3d 1016 (1991) .......... 29

*Saleh v. Nike, Inc.*,
562 F.Supp.3d 503 (C.D. Cal. 2021) .......... 15

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 25, 26

*Seneca v. Homeaglow, Inc.*,
2024 WL 750029 (C.D. Cal. Feb. 7, 2024) .......... 28

*Serrano v. Open Rd. Delivery Holdings, Inc.*,
666 F. Supp. 3d 1089 (C.D. Cal. 2023) .......... 27

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 12

*Shroyer v. New Cingular Wireless Serv., Inc.*,
622 F.3d 1035 (9th Cir. 2010) .......... 11

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 18

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 16

*Snow v. Eventbrite, Inc.*,
2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) .......... 24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 11

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ........ 18

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ........ 21

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 18

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 17

*Toy v. LifeLine Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ........ 8, 12, 15

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ........ 11

*Wright v. TrueCare Property Holdings,*
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ........ 14

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........ 14, 15

*Yockey v. Salesforce, Inc.*,
688 F.Supp.3d 962 (N.D. Cal. 2023) ........ 16

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 14

**STATUTES**

Cal. Penal Code § 632 ........ 17

N.Y. Gen. Bus Law § 349 ........ 19, 20

Cal. Penal Code § 631 ........ 9, 14,15

**RULES**

Fed. Rule Civ. Proc. 12(b)(1) ........ 11

Fed. Rule Civ. Proc. 12(b)(6) ........ 8

## INTRODUCTION

When people seek medical advice and treatment for weight loss and for medication options, they reasonably expect that any sensitive health information they provide to prospective medical providers will be kept confidential. FuturHealth, Inc. systematically and methodically violated that expectation by installing, configuring, and using pixels and similar tracking technologies (the "Pixel") on its website to collect and to disclose Plaintiff Rebecca Hickey's and others' personal health information to third-party ad-tech companies such as Taboola, Inc.

FuturHealth's use of the Pixel was no accident. FuturHealth chose to embed the Pixel on its website, configure the Pixel to delineate precisely what information it wanted to collect from unsuspecting visitors, and send that information to third parties for, among other things, website analytics and remarketing. FuturHealth could—and certainly should—have disclosed these practices. Evidently ascribing to the maxim that it is better to ask forgiveness than permission, FuturHealth elected to take its chances that it would get away with these unlawful acts.

Now, seeking to avoid judicial scrutiny of its actions, FuturHealth seeks complete dismissal of Plaintiff's Complaint or, alternatively, to compel arbitration. FuturHealth's Motion to Dismiss ("MTD") does not refute Plaintiff's core allegation that it used the Pixel to collect its patients' and prospective patients' sensitive and protected Private Information—defined in the complaint as "personally identifiable information" ("PII") and "protected health information" ("PHI")—and divulged that information to Taboola. Rather, FuturHealth seeks dismissal under FRCP 12(b)(1), contending that Plaintiff has not alleged an injury-in-fact. But the "intentional unauthorized disclosure of her sensitive medical information [is] so highly offensive that it is sufficient" to confer standing—as numerous courts in the Ninth Circuit have held in nearly identical healthcare tracking cases. *See, e.g.*, *Toy v. LifeLine Screening of Am. Ltd.*, 2024 WL 1701263, at *1, 4 (N.D. Cal. Mar. 19, 2024).

FuturHealth's FRCP 12(b)(6) arguments fare no better. First, Plaintiff

plausibly alleges violations of § 631 of the California Invasion of Privacy Act ("CIPA") because Taboola is a third party and Defendant aided in its interception. Second, the § 632 claim likewise survives because CIPA applies to internet communications and Plaintiff's health-related communications were confidential. Third, Plaintiff states a claim under the Electronic Communications Privacy Act ("ECPA") because she plausibly alleges a criminal violation of the Health Insurance Portability and Accountability Act ("HIPAA") thus invoking the crime-tort exception. FuturHealth's proffered commercial purpose does not absolve it of liability. Simply put, a defendant can want to make money and also violate the law; in fact, the two often go hand in hand. Fourth, the New York Deceptive Trade Practices Act ("NYDTPA") claim is adequately pled as Plaintiff alleges that FuturHealth's disclosure of her medical information was a material omission. Fifth, the unjust enrichment claim is viable because FuturHealth unjustly retained a benefit and Plaintiff seeks disgorgement, which is unavailable under the statutory claims.

FuturHealth's attempt to compel arbitration is equally unavailing. FuturHealth fails to establish that Plaintiff actually agreed to arbitrate her claims. In putative support, FuturHealth argues that a hypothetical individual that visited a page that Plaintiff is not alleged to have visited, agreed to arbitrate their claims. Such rote supposition is insufficient to evidence an unequivocal manifestation of assent as the law requires. Moreover, even if Defendant had established that Plaintiff did complete the steps in its declaration, her consent would nevertheless be ineffectual because it was procured by FuturHealth's fraudulent statement that her information would be kept "100% confidential." *See* ECF No. 10-2 ("Burgi Decl."), ¶ 7.

In sum, this Court should deny Defendant's motion because Plaintiff has suffered an injury in fact sufficient to confer Article III standing, has adequately pled each cause of action, and has not agreed to arbitrate her claims.

## FACTUAL BACKGROUND

FuturHealth owns, maintains, and controls the website www.fh.co along with its related domains and its subpages. ¶ 4.[1] The website targets individuals seeking weight management and weight loss treatment and allows them to solicit telehealth services and health products. *Id*. Patients and prospective patients, including Plaintiff, communicated with FuturHealth via its website to determine eligibility for prescriptions and to obtain prescriptions, among other things. ¶¶ 4, 32-35, 60, 64.

Unbeknownst to those website users, FuturHealth embedded, configured, and used software technology developed by Taboola, known as the Taboola Pixel. ¶¶ 37-59, 65-71. The Pixel is a website tracking code offered "to advertisers" that, among other things, "track[s] actions such as purchases, sign-ups, add-to-cart events, and content views." ¶¶ 7, 23, 37-59, 65-71. The Pixel allowed Taboola to contemporaneously intercept patient communications such as the type of medical treatment sought, medical diagnoses, BMI, and medications purchased. ¶¶ 37-59, 65-71. By embedding the Pixel into its website, FuturHealth aided Taboola in simultaneously intercepting patients' confidential website communications that contained PII and PHI. *See* ¶¶ 1, 5, 7, 10, 37-59, 65-71, 75.

Plaintiff used the website to communicate with FuturHealth, including to assess her eligibility to obtain new prescriptions and to provide information about previous surgeries, weight loss goals, and preexisting health conditions. ¶¶ 1, 5, 7, 10, 37-59, 65-71, 74, 75. As a result of the Pixel, Taboola was able to (and did) intercept Plaintiff's confidential PII and PHI. *Id*. The intercepted communications included clear text that set forth the information Plaintiff provided. ¶¶ 37-59, 64-71, 74-75 (detailing the PII and PHI that Plaintiff provided in response to the eligibility questionnaire). Taboola then used the intercepted data to create datasets that allowed the sale of such private information "to advertisers, profiling users without their knowledge, targeting users with advertisements based on their medical conditions,

[1] Citations to "¶" and "¶¶" are citations to the Complaint (ECF No. 1) throughout.

and other improper uses of users' Private Information." ¶¶ 7, 31, 53-54. Plaintiff never consented, agreed to, or otherwise permitted FuturHealth to disclose her PII or PHI to Taboola or anyone else, ¶¶ 10, 50-51, 75, but Defendant did so anyway.

## LEGAL STANDARDS

To establish Article III standing, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "Intangible harms" are concrete for standing purposes when they have a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo*, 578 U.S. at 341).

Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See, e.g.*, *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (noting that a claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")).

## ARGUMENT

### A. PLAINTIFF HAS ARTICLE III STANDING.

#### 1. Disclosure of Medical Information Is Highly Offensive.

FuturHealth brazenly asserts Plaintiff lacks Article III standing because she does not "allege harm that would be '***highly offensive*** to the reasonable man.'" MTD at 5:2-3 (citation omitted & emphasis in original). FuturHealth relies extensively on *Popa v. Microsoft Corporation* which involved only non-sensitive information—pet supply browsing and a partial address. *See* 153 F.4th 784, 791 (9th Cir. 2025) (finding that the information involved was not "embarrassing, invasive, or otherwise private"). FuturHealth attempts to equate browsing for pet supplies and a partial address with Plaintiff's disclosure of sensitive health information, including specific

answers to intake questions concerning surgeries, weight loss goals, and health conditions. *Compare* MTD at 5:9-10 (relying on *Popa* for the proposition that "[c]ourts have routinely held that plaintiffs asserting facts similar to the Complaint's allegations failed to meet this standard."), *with* ¶¶ 64-68, 74 (describing Plaintiff's sensitive information).

Numerous courts have rejected similar attempts to shoehorn *Popa* and found standing where, as here, the disclosed information implicates health or other sensitive personal matters. *See, e.g.*, *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *7 (N.D. Cal. Aug. 29, 2025) (distinguishing *Popa* because health-related data is "likely more sensitive"); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (distinguishing *Popa* where disclosures involved "personal topics like nutrition and fitness tracking"); *Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*, 2025 WL 2781542, at *5 (D. Md. Sept. 30, 2025) (distinguishing *Popa* because its non-sensitive "information is very different from information that a person is in the process of seeking or obtaining fertility treatment").

This case aligns with *Gabrielli*, *Shah*, and *Doe*, and not *Popa*, because it concerns the disclosure of PHI. FuturHealth's attempt to equate sensitive PHI and PII with dog treats and a partial address (*Popa*), shoes and fingerprint data (*Converse*), and lumber and an IP address (*Lowe's*) should not be countenanced. Courts recognize that the unauthorized disclosure of medical information at issue here is "highly offensive" and thus a concrete injury—so too should this Court. *See, e.g.*, *Toy*, 2024 WL 1701263, at *1, 4 (holding that the "intentional unauthorized disclosure of her sensitive medical information [is] so highly offensive that it is sufficient" to confer standing); *In re Ambry Genetics*, 567 F.Supp.3d 1130, 1143 (C.D. Cal. 2021) (finding that the "disclosure of [medical] information is more likely to constitute an egregious breach of the social norms that is highly offensive.").

FuturHealth's other cited cases are inapposite for the same reason—each involves non-sensitive information and none of them involves disclosures of

sensitive medical or health-related data. *Compare* MTD at 4–8, *with In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 801 (N.D. Cal. 2022) (stating that defendant "does not point to a single case where a court found that the collection of the kinds of [medical] information at issue here did not constitute a highly offensive invasion of privacy"). FuturHealth's opportunistic reading of Plaintiff's harms does not change this result. *Compare* MTD at 6-8 (incorrectly asserting that Plaintiff alleges "four general categories of harm" that are insufficient to confer standing while ignoring numerous allegations that Plaintiff suffered "harms related to the undisclosed [] transmission of Private Information"), *with e.g.*, ¶ 80.

2. Plaintiff Did Not Voluntarily Provide Her PHI to Taboola.

FuturHealth's suggestion that the disclosure of Plaintiff's Private Information to Taboola was not highly offensive because the information was voluntarily provided is meritless. *See* MTD at 6:8-17. FuturHealth relies heavily on *James v. Allstate Insurance Company* when it proclaims that "[c]ritically, the court emphasized that plaintiff had *voluntarily provided* information to [Allstate] in seeking an insurance quote… [and] plaintiff allege[d] no use by the third party other than storing that information for [Allstate] to refer back to." *Id.* (citing 2023 WL 8879246, at *6 (N.D. Cal. Dec. 22, 2023) (emphasis supplied).

Plaintiff's claim is that her privacy was violated when her PII and PHI was surreptitiously disclosed to Taboola who, in turn, used that supposedly confidential information for other purposes. ¶ 58. The Ninth Circuit has held that "allegations of surreptitious data collection" by a third-party advertiser with a website operator's assistance are sufficient to allege highly offensive conduct. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Unlike *James v. Allstate*, Plaintiff alleges here that Taboola ***used*** her communications for more than "storing [browsing] information for [Defendant] to refer back to." 2023 WL 8879246, at *6; *see also* ¶¶ 7, 31, 53-59.

Finally, FuturHealth's reliance on *Wright v. TrueCare Property Holdings* is

equally misplaced as that case did not address whether such disclosures are highly offensive. Rather, the court dismissed the complaint because, unlike here, the plaintiff did not allege "what her visits revealed about her healthcare information." *Compare* MTD at 6 (citing 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025), *with e.g.*, ¶¶ 37-59, 64-71, 74-75 (detailing what Hickey's visits revealed).[2]

**B. Plaintiff States Plausible Claims Under Each Cause of Action.**

In addition to asserting that the collection and disclosure of PHI without consent is not highly offensive, FuturHealth challenges the legal sufficiency of each of Plaintiff's causes of action. As set forth below, each challenge fails.

1. CIPA § 631 – FuturHealth Aided Taboola's Interception.

After attempting to equate pet-supply browsing with the surreptitious capture and disclosure of confidential medical information, FuturHealth next argues that the CIPA § 631 claim should be dismissed because it was party to the communications and Plaintiff did not plead it aided in Taboola's interception. *See* MTD 9:10-10:19.

To begin, the "party exception" to § 631 is narrow and applies only because "[a] party to a conversation cannot logically be liable for 'eavesdropping' on a conversation[.]" *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 975–76 (C.D. Cal. 2023). But that principle does not extend to situations where a party permits third parties to eavesdrop on a conversation. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (holding that "a conversationalist is betrayed equally by a wiretapper and by the willing conversation participant who surreptitiously allows that third party to wiretap."); *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 900 (N.D. Cal. 2023) ("Defendants argue that Plaintiff would have no claim if Assurance had created the TrustedForm software itself. This is true. But under [§] 631, it has always mattered who is holding

[2] Finally, whether an invasion of privacy is highly offensive is a fact-intensive inquiry that courts are reluctant to resolve at the pleading stage. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 942–43 (N.D. Cal. 2023). Only if the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests can the question of a serious or highly offensive invasion of privacy be adjudicated as a matter of law. *See Gabrielli*, 2025 WL 2494368, at *8.

the tape recorder . . . .") (cleaned up); *Saleh v. Nike, Inc*., 562 F.Supp.3d 503, 521 (C.D. Cal. 2021).[3] In other words, "when a first party intends to communicate with a second party, and computer code automatically directs the communication to an additional third party, the third party is not construed as a party to the communication, and so the party exception does not shield the third party." *Valenzuela*, 686 F. Supp. 3d at 976 (citing *In re Facebook, Inc., Internet Tracking Litig*., 956 F.3d at 607-08).

That is precisely what Plaintiff alleges as she details how the Pixel operates to track website visitors and the actions that they take for marketing and analytics. *See* ¶¶ 32-59. Plaintiff further alleges that FuturHealth "made the conscious and intentional decision to install" the Pixel on its website "thereby allowing Taboola, among others possible third-party interceptors, to intercept and to collect all user interactions." ¶ 60. Plaintiff also describes the specific communications that FuturHealth aided Taboola in obtaining. ¶¶ 61-71.

Courts hold—when reviewing identical or analogous allegations—that third parties like Taboola constitute a third-party eavesdropper that Defendant aided by installing the Pixel onto the website. *See, e.g.*, *In re Facebook*, 956 F. 3d at 608 ("Facebook is not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication."); *Toy*, 2024 WL 1701263, at *1 (holding that "Life Line aided a third party's violation of" CIPA by "installing [the Meta] Pixel and Google Analytics on its website"). This Court should hold the same.

//

//

//

---

[3] To the extent that FuturHealth seeks to invoke the party extension exception to § 631 liability, that argument is misguided because Plaintiff alleges that Taboola uses the communications for its own independent "marketing analytics and behavioral targeting purposes" ¶¶ 127, 58. These allegations satisfy either the "use" or the "capability of use" standards that courts in this Circuit have devised for assessing whether a third party acts more like a third party orF a tape recorder. *See, e.g.*, *Ambriz v. Google, LLC*, 2025 WL 830450, at *3 (N.D. Cal. Feb. 10, 2025).

2. <u>CIPA § 632 – Health-Related Communications Are Confidential.</u>

Next, FuturHealth argues that Plaintiff's CIPA § 632 claim should be dismissed because the communications were not confidential and § 632 does not apply to the internet. *See* MTD 11:4-12:13.

First, communications are confidential under § 632 if one of the parties has a reasonable expectation that the communication is not being recorded. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 798 (N.D. Cal. 2022) (explaining that "unlike communications… [concerning] a retail website, health-related communications with a medical provider are almost uniquely personal"). Health-related communications give rise to a reasonable expectation of confidentiality irrespective of whether the defendant makes an affirmative privacy misrepresentation—like the defendant did in *Brown*. *See also Yockey v. Salesforce, Inc.*, 688 F.Supp.3d 962, 973–74 (N.D. Cal. 2023) (holding that health-related communications with customer support were confidential); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. Jul. 25, 2025) (finding health-related communications with discount provider confidential); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (same). Plaintiff does not need to allege she visited the website in "Incognito Mode." *See* MTD at 11 (citing *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936-37 (N.D. Cal. 2023)). Rather, the information collected from Plaintiff included information about previous surgeries she had, preexisting health conditions, and other answers about her medical history. *See, e.g.*, ¶ 74. Plaintiff reasonably expected these communications to be confidential.[4]

Second, FuturHealth's contention that § 632 does not apply to the internet is unfounded. The dicta in *Swarts* that it relies on regarding the plain meaning of the text contains no analysis and fails to recognize that § 632's prohibition on electronic

[4] To the extent there is any ambiguity, "'[t]his is a 'fact-intensive inquiry' that is often too difficult to resolve at the pleadings stage." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024).

eavesdropping of confidential communications is not limited by the medium through which those communications travel—as even Defendant's other cited authority recognizes. *Compare* MTD at 12 (citing *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023)), *with* MTD at 11 (citing *Brown*, 685 F. Supp. 3d at 937 (rejecting argument that internet communications not confidential noting that nothing in § 632's text "ties confidentiality to the mode in which a conversation is recorded")). Instead, CIPA covers communications carried on "by means of any electronic amplifying or recording device" without limiting its reach to any particular technology or medium. *See* Cal. Penal Code § 632(a).

3. ECPA – FuturHealth's Criminal or Tortious Purpose is Not Defeated Because Defendant Also Sought to Make Money.

FuturHealth argues that the ECPA claim should be dismissed for two reasons: (i) the party exception applies and (ii) the crime-tort exception is inapplicable because it had a commercial purpose.

First, the party exception does not apply where the interception is undertaken for a criminal or tortious purpose. *Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *8 (N.D. Cal. Jan. 27, 2026). Plaintiff plausibly alleges such a purpose. Specifically, Plaintiff alleges how FuturHealth's conduct violates HIPAA, including allegations that FuturHealth is a covered entity and knowingly disclosed PHI. ¶¶ 5–6, 17, 21–28, 129. Courts nationwide have recognized that a violation of HIPAA can give rise to the crime-tort exception. *See, e.g.*, *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *5-6 (C.D. Cal. Jan. 13, 2025) (allegations of intent to disclose medical information in violation of HIPAA places claim "squarely within the crime-tort exception"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) (same); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) (same); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *6 (S.D.N.Y. July 30, 2024) (same). So, too, should this Court.

Second, FuturHealth's commercial purpose (installing trackers for marketing and analytics purposes) does not defeat the crime-tort exception. "[E]ven where a

defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated [the] law." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (collecting cases); *see also R.S.*, 2025 WL 103488, at *7; *Tenet Healthcare Corp*., 789 F. Supp. 3d at 849; *OpenX*, 2026 WL 206855, at *8. As explained above, Plaintiff has alleged such a criminal purpose.

Moreover, "the crime-tort exception applies when a party uses intercepted communications to blackmail someone, even if the primary motivation for engaging in blackmail is to make money." *Smith v. Rack Room Shoes, Inc.,* 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (joining "the majority of courts that have held a monetary purpose does not insulate a party from liability under the Wiretap Act"). Even Defendant's cited authority discusses committing blackmail as the quintessential criminal or tortious purpose and blackmail itself typically has a money-making purpose. *See Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("The existence of the lawful purpose would not sanitize a tape that was also made for an illegitimate purpose; the taping would violate [§] 2511").

Further, "[t]he language of the statute gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations[.]" *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *5 (N.D. Ill. Feb. 21, 2025) *motion to certify appeal granted*, 2026 WL 594752 (N.D. Ill. Mar. 3, 2026). This makes sense because "existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive." *Id.* "After all, lots of crimes and torts are money-makers. Crime pays (until it doesn't)." This Court should follow the weight of authority and find that a commercial purpose does not insulate Defendant from liability.[5]

//

[5] Plaintiff's reference to ECPA §2511(3)(a) is not intended to assert an independent cause of action. *See* MTD at 14. To the extent the Court construes it as such, Plaintiff withdraws that claim.

4. NYDTPA – FuturHealth's Omission of its Surreptitious Disclosure to Taboola was Materially Misleading.

FuturHealth's arguments in support of its request for dismissal of Plaintiff's NYDTPA claim are equally unpersuasive. FuturHealth contends that its conduct was not materially misleading, despite deliberately placing the Pixel on its website to collect and to transmit patients' and prospective patients' PHI and PII to third parties, while concealing that practice from the very individuals whose sensitive information it was disclosing thereby depriving them of the ability to make an informed decision about whether to provide such information in the first place.

The NYDTPA proscribes all "deceptive acts or practices" in commerce. N.Y. Gen. Bus Law § 349. The statute defines "deceptive" objectively as "representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). In nearly identical circumstances, courts have held that failing to notify users about how their private and health-related information would be shared with third parties is a materially misleading omission. *See, e.g.*, *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143, at *2 (N.D. Cal. Oct. 25, 2024); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *6 (S.D.N.Y. July 30, 2024); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *16 (W.D.N.Y. Mar. 19, 2024). Plaintiff plausibly alleges that FuturHealth failed to notify users about how the information collected would be shared with third parties via the Pixel. ¶ 3, 75, 135. Plaintiff also explains why this omission was material as users would likely not have shared their sensitive health information, prescription medication details, and medical history if they had known this information would be shared with third parties. ¶ 141. Nothing more is required.

Further, under the NYDTPA, the wrongful misappropriation of health data without notice is itself a deceptive act or practice and it does not, as Defendant contends, require a material misrepresentation or omission. *GoodRx Holdings*, 2025 WL 2052302, at *13. And patients reasonably expect that information shared with a

prospective healthcare provider remains confidential. Defendant's silent facilitation of third-party eavesdropping on those communications is a deceptive omission that Plaintiff's non-viewing of any privacy policy does not negate. *See LMND Med. Grp.*, 2024 WL 4579143, at *2; *see also GoodRx*, 2025 WL 2052302, at *13 ("A privacy injury can be the basis for a § 349 claim where [Private Information]…is collected without…knowledge or consent.") (citing *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F.Supp.3d 369, 383–84 (S.D.N.Y. 2024)).[6]

Lastly, Defendant's argument that Plaintiff does not allege FuturHealth knew that disclosure of PHI would be materially misleading to reasonable consumers or that it knew its disclosures were inadequate is false. *See* MTD at 16. A reasonable consumer seeking medical care who shares sensitive PHI with a prospective healthcare provider reasonably expects that information to remain confidential. Here, Plaintiff alleges that "Defendant knew it failed to disclose to Plaintiff and New York Subclass Members that their healthcare-related communications via the website would be disclosed to Taboola" and that FuturHealth's acts were "willful and knowing." ¶¶ 137, 144. The Pixel did not just appear on its website; rather, FuturHealth made numerous intentional decisions designed to gather as much information as it could without disclosing its use of tracking technology to do so.[7]

5. Unjust Enrichment – Retained Benefits Should be Disgorged.

FuturHealth requests dismissal of Plaintiff's unjust enrichment claim because (i) unjust enrichment is not recognized as an independent cause of action and (ii) the unjust enrichment claim is based on the same conduct and harm underlying

---

[6] FuturHealth's reliance on *In re Unite Here Data Security Litigation*, 740 F.Supp.3d 364, 387 (S.D.N.Y. 2024), does not alter that conclusion. That case arose in a data breach context and concerned affirmative misrepresentations *in* a privacy policy—not the omission of third parties eavesdropping on communications. Here, the gravamen of Plaintiff's claims is Defendant's failure to disclose that third parties were intercepting confidential medical communications.

[7] *Baton v. Ledger* is inapposite because it dealt with whether a data breach "defendant *knew* that their security procedures were inadequate." 740 F. Supp. 3d 847, 916 (N.D. Cal. 2024) (emphasis in original). In contrast, here, FuturHealth knows that its disclosing information to third parties—it implemented the Pixel.

Plaintiff's statutory claims. *See* MTD at 16–17. Both arguments miss the mark.

First, "[t]o allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Here, Plaintiff alleges that FuturHealth benefited from using Plaintiff's information and that her remedies at law are inadequate. *Compare* ¶ 148, *with e.g.*, *LMND Med. Grp.*, 2024 WL 4579143, at *4 (finding that plaintiffs' allegation that defendant benefitted from their information and that plaintiffs failed to receive the benefit of their bargain was sufficient); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (same).

Second, courts routinely allow unjust enrichment claims to proceed where plaintiffs seek to obtain relief not afforded by their statutory claims. In *R.C. v. Walgreen Co.*, the plaintiff was allowed to proceed with her unjust enrichment claim because she sought to obtain restitutionary disgorgement of profits, which was not an available form of relief for her statutory claims. *See* 733 F.Supp.3d 876, 899-900 (C.D. Cal. 2024); *see also GoodRx Holdings*, 2025 WL 2052302, at *16; *LMND Med. Grp.*, 2024 WL 4579143, at *4. Here, Plaintiff seeks relief that is not available under the statutes pled, namely, to disgorge FuturHealth's benefits, profits, and value gained from their unauthorized collection and use of consumers' private health information. *See* ¶ 158.

### C. The Motion to Compel Should be Denied.

FuturHealth asserts that "Plaintiff's claims are all subject to a mandatory arbitration agreement to which Plaintiff consented." MTD at 17:13-14. The threshold inquiry of whether a valid agreement to arbitrate was formed in the first instance is a question that this Court and not the arbitrator must answer. *See, e.g.*, *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017). FuturHealth, as the party moving to compel, bears the burden to prove that a valid, enforceable agreement to arbitrate was formed. *See Stover v. Experian Holdings,*

*Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). The court affords the non-movant "the benefit of all reasonable doubts and inferences." *Lopez v. Dave, Inc.*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023) (citations omitted). "[O]nly when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration." *Ireland-Gordy v. Tile, Inc.*, 2024 WL 5162413, at *4 (N.D. Cal. Dec. 19, 2024) (citations omitted). FuturHealth has not satisfied its burden to establish that Plaintiff manifested assent.

1. No Agreement to Arbitrate Was Formed.

FuturHealth bears the burden of proving that Plaintiff had notice of, and assented to, its Terms of Use containing the arbitration agreement. *See* Burgi Decl. Ex. A (the "Terms"). The Burgi Declaration states that "[i]n October 2024, website users received notice of FuturHealth's Terms of Use and Privacy Notice upon completion of the online questionnaire and approval for a prescription plan, but before receiving details of that plan" and displays a "See My Results" screen (reproduced below) that Ms. Burgi states would have been available at that time. *See* Burgi Decl. ¶ 7.

However, there is no evidence that Plaintiff Hickey was aware of FuturHealth's Terms, and she alleges and attests she never saw them. ¶ 75; Declaration of Rebecca Hickey ("Hickey Decl.") ¶¶ 5-9. The Burgi Declaration provides no foundation as to whether *Plaintiff Hickey* would have actually been exposed to this screen—as opposed to a hypothetical October 2024 website user. If Plaintiff Hickey completed the steps FuturHealth claims she did, the questionnaire would have collected her PII such that FuturHealth should have records establishing her assent to the arbitration agreement at a particular time and on a particular date. Yet FuturHealth provides no such evidence. Indeed, Plaintiff alleges that she entered her name and email address. ¶ 74. But Defendant fails to provide any records confirming this. *See, e.g.*, *Platt v. Sodexo, S.A.*, 148 F.4th 709, 718 (9th Cir. 2025) (affirming denial of motion to compel for lack of evidence of contract formation).

Compounding matters, the Burgi Declaration is premised on the notion that a hypothetical user visiting the website in October 2024 must have been presented with the Terms to view their results. Burgi Decl. ¶ 7. But Plaintiff does not allege that she viewed her results then. *See* Hickey Decl. ¶¶ 6-10 (attesting the same and lack of recollection concerning viewing screen presented in Burgi declaration or results of quiz after initial visit). Rather, she alleges that she input answers to "sensitive questions about her health, including questions regarding previous surgeries, weight loss goals, preexisting health conditions." ¶ 74. And she alleges that she "had not checked any box, clicked any button, or taken any other affirmative action indicating consent" to an agreement like the Terms. ¶ 77; *see also* Hickey Decl. ¶ 7 (attesting Hickey does not recall checking the box presented in the Burgi declaration). FuturHealth never establishes that Plaintiff encountered the screen it bases its motion on; in fact, Burgi provides zero information as to Hickey's particular interactions with the screen.

These evidentiary issues are material. The screen flows presented in the Burgi Declaration are misleading and inaccurate. To wit, the screen flows have repeatedly changed since Hickey's visit, and the version of FuturHealth's questionnaire in the Complaint does not present the Terms to the user in order to receive results. *Compare* Burgi Decl. ¶ 7, *with* ¶ 65; Hickey Decl. ¶¶ 12-13; Declaration of Lucas Coughlin ¶¶ 3-8. Further, despite that Ms. Burgi attests that the Terms appended to her declaration were "in effect in October 2024," the Terms, themselves, say that they were "last updated October 11, 2024." Burgi Decl. ¶ 10, Ex. A. The Burgi declaration is silent as to whether (i) the screen presented in it was also different before October 11, 2024 and (ii) the Terms in effect before October 11, 2024 had an arbitration agreement. *See* Burgi Decl. ¶¶ 6, 7, 10 (attesting to screens and terms "in October").

Even assuming that Hickey proceeded through the steps discussed in the Burgi declaration, and completed the quiz and clicked the "See my Results" button

displayed in that declaration—neither of which Plaintiff concedes nor has Defendant established (Hickey Decl. ¶ 8)—the Burgi declaration is *still* deficient because it does not establish that Plaintiff visited the website after October 11, 2024 nor whether the Terms in effect before October 11, 2024 contained an arbitration agreement at all.

As all reasonable inferences must be drawn in favor of Plaintiff Hickey, the Court should conclude there is no evidence she agreed to arbitrate. *See, e.g.*, *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at *6 (N.D. Cal. Oct. 19, 2020) (Defendant "would only be able to carry its burden if it could show what…the plaintiffs ***would have actually seen***.") (emphasis added); *In re Stubhub Refund Litig.*, 2021 WL 5447006, at *7-8 (N.D. Cal. Nov. 22, 2021) (denying arbitration because court did "not know what sign-up screen…Plaintiffs saw when they registered," such that it "cannot adequately assess whether they received constructive notice of the" arbitration agreement); *Dawson v. Target Corp.*, 2025 WL 1651940, at *2 (N.D. Cal. June 11, 2025) (denying motion to compel "because Defendants have not demonstrated that they are the same screens Plaintiff…would have seen"); *Lopez v. Dave Inc.*, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022), *aff'd* 2023 WL 8594393 (9th Cir. Dec. 12, 2023) (declaration in support of motion to compel arbitration was "deficient" where it failed to attest that the "attached sign-up page was the version that" plaintiff viewed).

2. FuturHealth Did Not Provide Sufficient Notice of Arbitration.

Even assuming the Burgi Declaration is admissible (it is not) and that FuturHealth's proffered screens are accurate (they are not), FuturHealth nevertheless failed to provide sufficient notice of its Terms. In the Ninth Circuit, a finding of assent requires that the offeree had either actual or inquiry notice of the terms to be bound. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). California's contract formation principles "apply with equal force to contracts formed online[,]" such as the agreement employed here. *Id.* at 855-56.

At the outset, in Ninth Circuit "clickwrap" agreements are those where the user is required to accept terms "by clicking or checking a box stating she agrees." *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (citations omitted); *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014) (clickwrap agreements require users to "click on an 'I agree' box after being presented with a list of terms and conditions of use"). Where boxes are pre-checked, an agreement does not function as a true "clickwrap" agreement and Courts apply "sign in wrap" inquiry notice principles in determining formation. *See Godun v. JustAnswer LLC*, 135 F.4th 699, 707, 712 n.6 (9th Cir. 2025).

Here, the Burgi declaration provides a single screenshot of the page of which the hypothetical website user would have viewed, which Ms. Burgi states is reflective of how the screen would have been presented to the user. Burgi Decl. ¶¶ 7, 8. That screen indicates that the box was prechecked when the user landed on the screen. *Id.* ¶ 7.[8] Accordingly, the screen is akin to a sign-in wrap agreement where "the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla*, 129 F.4th at 1154; *see also Godun*, 135 F.4th at 710-13 (applying sign-in wrap analysis to pre-checked boxes). In these types of sign-in wrap agreements, a "consumer's assent is largely passive" because "it is not apparent that the consumer is aware that they are agreeing to contractual terms simply by clicking some other button." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471 (2021).

Regardless of whether analyzed through the prism of "clickwrap" or "sign-in wrap", the touchstone rules for analyzing internet contract formation are uniform:

[8] Although the Burgi declaration does not clearly state whether the box was pre-checked or not, the only screenshot provided in the declaration indicates that the screen was pre-checked. It reflects a box that is checked before a user has entered their name or email. As such, and because the court must afford the non-movant "the benefit of all reasonable doubts and inferences," the Court should find that the box was pre-checked and treat the agreement as a sign-in wrap agreement. *Lopez v. Dave, Inc.*, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023). But, even if it does not, it is still unenforceable for the same reasons discussed herein.

> Unless the website operator can show that a consumer had actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.

*Berman*, 30 F.4th at 856. In assessing the conspicuousness of notice of terms, courts look to "the size of the text," the "proximity [of the text] to any box or button the user must click to continue use of the website," the "obviousness of any associated hyperlink," and whether the screen has "clutter or otherwise obscure[s] the textual notice." *Sellers*, 73 Cal. App. 5th at 473. Here, Plaintiff lacked notice of the terms.

a. Defendant's Deemphasized Hyperlinks are Inconspicuous.

First, in the screen proffered in the Burgi Declaration, the hyperlinks and preceding disclaimers are in such a miniscule text size that they are nearly unnoticeable to any average user, difficult to read, and are not sufficiently obvious or set apart from the rest of the text on the screen. Any reasonable consumer presented with these screens would overlook the inconspicuous hyperlinks.

The *Berman* decision is analogous. There, the Ninth Circuit affirmed the court's order denying defendant's motion to compel arbitration on the grounds that the terms to which plaintiffs would be bound were not "reasonably conspicuous":

> The text disclosing the existence of the terms and conditions on the websites is the antithesis of conspicuous. It is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font that is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else. And the textual notice is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text. Far from meeting the requirement that a webpage must take steps to capture the user's

> attention and secure her assent, the design and content of these webpages draw the user's attention away from the most important part of the page.

*[Remainder of page left intentionally blank]*

*Berman*, 30 F.4th at 856-57 (cleaned up). The relevant portion of a screenshot from the screens at issue in *Berman* is incorporated below:




*See id.*, at Appendix B.

Courts regularly deny motions to compel arbitration on the grounds that hyperlinked terms were not reasonably conspicuous enough to bind the user to arbitration where they were underlined but were not in capital letters and appeared in the same font color as the rest of the sentence. *See e.g.*, *Lopez*, 2023 WL 8594393 at *1 (denying motion where terms were underlined because they were in tiny grey font and in sentence caps); *Plata v. Lands' End, Inc.*, 2024 WL 5339858, at *5 (C.D. Cal. Dec. 19, 2024) (same where the "hyperlink is the same color, size, and style of font as the rest of the text in the notice and a … color … that does not stand out amongst the rest of the text on the screen"); *Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1093 (C.D. Cal. 2023) (same where "nothing in the webpage draws the viewer's attention to" the Terms that lacked contrasting font color or capital letters).

As in *Berman* and the other cases above, even assuming Plaintiff viewed the screen (which she does not concede) the hyperlink to FuturHealth's Terms is printed in a tiny font that is substantially smaller than the surrounding text, and the textual

notices are in non-contrasting color and deemphasized in comparison to the overall screen design. The hyperlinks here are also problematic because they are in the same color font and none are in all caps. *See Berman*, 30 F.4th at 857 (cautioning that hyperlinks should "include the use of a contrasting font color (typically blue) and the use of all capital letters"); *see* Burgi Decl. ¶ 7:




Further, the fact that the hyperlink on FuturHealth's proffered screen (if it ever was displayed to Plaintiff, which Plaintiff contests, *see* Hickey Decl. ¶¶ 6-11) is denoted in underlined text is insufficient to salvage the overwhelming inconspicuousness created by its tiny font size and placement that otherwise causes the terms to blend into the screen. In fact, many courts have refused to bind consumers to terms even where they were hyperlinked in a contrasting color. *See, e.g.*, *Farmer v. BarkBox, Inc.*, 2023 WL 8522984, at *2 (C.D. Cal. Oct. 6, 2023); *Chabolla v. ClassPass, Inc.*, 2023 WL 4544598, at *4 n.3. (N.D. Cal. June 22, 2023), *aff'd* 129 F.4th 1147, 1154 (9th Cir. 2025) (finding notice was insufficient due to *inter alia* tiny font); *Seneca v. Homeaglow, Inc.*, 2024 WL 750029, at *4 (C.D. Cal. Feb. 7, 2024) (holding notice was insufficient because the text was "no bigger" than the remaining text and "does not call any particular attention to these important

conditions”). A similar finding is appropriate here—the Terms were inconspicuous.

b. Plaintiff Did Not Unambiguously Manifest Her Assent.

The second step of the internet contract formation analysis requires consideration of whether “any action taken by the internet user unambiguously manifest[ed] his or her assent” to proposed contractual terms. *Godun*, 135 F.4th at 710 (citations omitted). That standard is exacting. Unambiguous assent can only occur “where an internet user is ‘*explicitly* advised that the act of clicking will constitute assent to the terms and conditions of an agreement.’ Even strongly implicit advisement isn't enough—a webpage must *explain* that certain actions will be understood by the offeror to signal assent to contractual terms. And it must identify what, exactly, those actions are.” *Id.* at 710-11 (citations omitted).

That did not occur here. As in *Godun,* here, “[t]he advisal on these pages failed to explicitly advise users of what action would constitute assent to any terms they were provided with.” *Id.* “The advisal lacked an explanatory phrase indicating that By clicking” See my Results Plaintiff agreed to the Terms. *Id.* at 712-13 (cleaned up). Rather, the pre-checked box stated, “I understand my information is kept 100% confidential and agree to the terms of service and privacy policy.” Burgi Decl. ¶ 7. Under binding Ninth Circuit precedent, “that is not enough to constitute ‘an unambiguous manifestation of assent’” to those terms. *Godun*, 135 F.4th at 713 (citing *Berman*, 30 F.4th at 857). Because the interface fails to communicate what action would signal agreement, no contract was formed. These authorities apply with even greater force here because, as discussed next, the advisal is not merely unclear, it is affirmatively misleading.

3. The Advisal Purports to Obtain Assent Via Fraud.

Even setting aside the foregoing defects, Defendant still fails to establish that Plaintiff formed a contract because any purported assent was obtained via fraud. Under California law, a contract is void and any arbitration provision therein unenforceable if “fraud went to the inception or execution of the agreement.” *DKS,*

*Inc. v. Corp. Bus. Sols., Inc.*, 675 F. App'x 738, 739 (9th Cir. 2017) (quoting *Rice v. Dean Witter Reynolds, Inc.*, 235 Cal.App.3d 1016, 1023 (1991)). Fraud in the inception may exist even if both parties had "ample opportunity to read the" Terms because the party drafting the Terms and designing the page layout may do so "in such a way as not to apprise" the other party of its intentions. *Id.* (quoting *Duick v. Toyota Motor Sales, U.S.A., Inc.*, 198 Cal.App.4th 1316, 1323 (2011)).

Fraud in the inception is present here because the advisal language says Plaintiff's information would be kept "100% confidential," which reasonably made Plaintiff believe she was entering into an arrangement whereby Defendant would keep her sensitive medical information confidential. Burgi Decl. ¶ 7. In *Duick*, for example, the Court of Appeals found that although the plaintiff indicated her agreement to "Terms and Conditions" freely, she was deceived as to the true nature of what the defendant proposed to do. *Id.* at 1321. Similarly, here, Defendant misrepresented that her communications would be confidential, when they were not.

That is not the only part of the contract that was misleading. The privacy policy, which is incorporated into the Terms (Burgi Decl. Ex. A § 6) made similar misrepresentations: "we will only collect and use PHI for the purposes of providing the Services . . . PHI will not be used for any other purpose without your consent." Burgi Decl. Ex. B. Website users, including Plaintiff, reasonably rely on such representations. Hickey Decl. ¶ 14. However, "Defendant's true intentions and subsequent actions revealed a different intention." *DKS, Inc. v. Corp. Bus. Sols., Inc.,* 2015 WL 4645346, at *4 (E.D. Cal. Aug. 4, 2015), *aff'd,* 675 F. App'x 738 (9th Cir. 2017) (citing *Ford v. Shearson Lehman Am. Express, Inc.*, 180 Cal. App. 3d 1011, 1018 (Ct. App. 1986) (finding fraud where plaintiff was not aware when signing the agreements he was actually facilitating the defendant's unjust enrichment)). Defendant represented that Plaintiff's information would be confidential in the statement purporting to obtain assent to the Terms. However, as detailed at length in the Complaint, Plaintiff's information was shared with Taboola

for the purpose of enriching Defendant. *See, e.g.*, ¶ 7. Plaintiff was unaware of Defendant's true intentions because it affirmatively misrepresented them. So, Plaintiff could not give honest assent to the contract. *See Duick*, 198 Cal.App.4th at 1318–20. The contract, and its arbitration agreement, is therefore void.

4. No Stay is Warranted Because This Case is Not Arbitrable.

Defendant's request to stay all proceedings must be denied for the same reasons its motion to compel arbitration fails—if no valid and enforceable arbitration agreement exists, there is nothing to stay. *See, e.g.*, *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002) ("When determining whether to stay proceedings pending arbitration, a court must consider whether the arbitration agreement validly was formed[.]") (citing *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002)). To the extent that Defendant's request for a stay "while a ruling on compelling arbitration is pending" is construed as a request to stay discovery, that request should also be denied. *Compare* MTD at 22, *with Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011) ("[D]istrict courts look unfavorably upon such blanket stays of discovery.") (collecting cases).

## CONCLUSION

FuturHealth's motion should be denied in its entirety. Alternatively, Plaintiff respectfully requests leave to address any pleading deficiencies identified by the Court. *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

DATED: March 20, 2026

Respectfully Submitted,

*/s/ Victor J. Sandoval*

**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd. Suite 1121
Los Angeles, California 90034
t: (562) 534-5907
victor@almeidalawgroup.com

David S. Almeida (*pro hac vice*)
849 W. Webster Avenue
Chicago, Illinois 60614
t: (708) 437-6476

david@almeidalawgroup.com

Matthew J. Langley
849 W. Webster Avenue
Chicago, Illinois 60614
t: (773) 554-9354
matt@almeidalawgroup.com

*Attorneys for Plaintiff & the Classes*