JOSEPH W. SWANSON (admitted *pro hac vice*)
joe.swanson@foley.com
FOLEY & LARDNER LLP
100 N. TAMPA STREET, SUITE 2700
TAMPA, FL 33602
TELEPHONE: 813.229.2300
FACSIMILE: 813.221.4210

MASON D. ROBERTS (admitted *pro hac vice*)
mroberts@foley.com
FOLEY & LARDNER LLP
321 N. CLARK STREET, SUITE 3000
CHICAGO, ILLINOIS 60654
TELEPHONE: 312.832.4500
FACSIMILE: 312.832.4700

BROOKE CLARKE, CA Bar No. 353511
bclarke@foley.com
FOLEY & LARDNER LLP
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130
TELEPHONE: 858.847.6700
FACSIMILE: 858.792.6773

Attorneys for Defendant FUTURHEALTH, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REBECCA HICKEY, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>FUTURHEALTH, INC.,<br><br>Defendant. | Case No. 3:25-cv-03051-H-DDL<br><br>**FUTURHEALTH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**<br><br>Date: April 13, 2026<br>Time: 10:30 a.m.<br>Place: Courtroom 12A<br>Judge: Hon. Marilyn L. Huff<br><br>Case Filed: November 7, 2025 |

# TABLE OF CONTENTS

Page


I. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE AN INJURY-IN-FACT SUFFICIENT TO CONFER ARTICLE III STANDING. .......... 1

II. THE COURT SHOULD DISMISS THE COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6). .......... 3

- A. FuturHealth Did Not "Aid and Abet" Taboola and Is Subject to the Party Exception under CIPA § 631 (Count I). .......... 3
- B. Plaintiff's Internet Communications Were Not Confidential under CIPA § 632 (Count II). .......... 4
- C. Plaintiff Fails to Adequately Allege any Crime-Tort Exception under the Wiretap Act (Count III). .......... 5
- D. Plaintiff Fails to Adequately Plead a Claim under the New York Deceptive Trade Practices Act (Count IV). .......... 6
- E. Plaintiff Cannot Sustain an Independent Claim for Unjust Enrichment (Count V). .......... 7

III. FUTURHEALTH HAS PRESENTED SUFFICIENT EVIDENCE TO COMPEL ARBITRATION AS AN ALTERNATIVE TO DISMISSAL. .......... 7

- A. FuturHealth Is Not Required to Adduce Records Specific to Plaintiff's Website Access and Demonstrate Actual Notice. .......... 7
- B. FuturHealth Provided Conspicuous Notice to All Website Users, Including Plaintiff. .......... 8
- C. Plaintiff, Like All Other Similarly Situated Website Users, Unambiguously Manifested Assent. .......... 9
- D. FuturHealth Did Not Obtain Any Assent Via Fraud and An Arbitrator, Not the Court, Must Consider this Defense. .......... 10

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**


*Baton v. Ledger SAS*,
740 F.Supp.3d 847 (N.D. Cal. 2024) ....................7

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................8, 9

*Bradshaw v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ....................2

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....................10

*Campbell v. Facebook, Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) ....................4

*Chabolla v. Classpass, Inc.*,
129 F.4th 1147 (9th Cir. 2025) ....................10

*Cullors v. Cerebral, Inc.*,
2024 WL 3385530 (9th Cir. July 12, 2024) ....................9, 10

*Doe v. Shady Grove*,
2025 WL 2781542 (D. Md. Sept. 30, 2025) ....................2, 3

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ....................2

*Gutierrez v. Converse, Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) ....................3

*In Re Ambry*,
567 F.Supp.3d 1130 (C.D. Cal. 2021) ....................3

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) ....................5

*In re Unite Here Data Sec. Litig.*,
740 F.Supp.3d 364 (S.D.N.Y. 2024) ....................6

*James v. Allstate Ins. Co.*,
2023 WL 8879246 n.3 (N.D. Cal. Dec. 22, 2023) .......... 3

*Lee v. Nature's Path Food, Inc.*,
2023 WL 7434963 (S.D. Cal. Nov. 9, 2023) .......... 7

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) .......... 6

*Platt v. Sodexo, S.A.*,
148 F.4th 709 (9th Cir. 2025) .......... 8

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) .......... 2, 3

*Small v. Fritz Cos., Inc.*,
30 Cal. 4th 167 (2003) .......... 10

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 6

*Swarts v. Home Depot, Inc.*,
689 F.Supp.3d 732 (N.D. Cal. 2023) .......... 5

*Valenzuela v. Nationwide Mutual Insurance Co.*,
686 F.Supp.3d 969 (C.D. Cal. 2023) .......... 4

*Wright v. TrueCare Prop. Holdings*, LLC,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) .......... 2

*Yockey v. Salesforce, Inc.*,
688 F.Supp.3d 962 (N.D. Cal. 2023) .......... 5

**Rules**

Federal Rule of Civil Procedure 12(B)(6) .......... 1, 3

Unable to defend the Complaint as actually pled, Plaintiff instead tries to rewrite it. Throughout her Opposition, Plaintiff attempts to pass off sparse, conclusory allegations in the Complaint as well-pled facts. She asserts her claims can survive dismissal based on alleged injuries and alleged misconduct the Complaint does not adequately plead. And she inaccurately describes FuturHealth's evidence showing that the parties agreed to arbitrate. But Article III standing, the inadequacy of Plaintiff's pleading under Rule 12(b)(6), and basic contract principles underlying the agreement to arbitrate turn on the Complaint's actual allegations and actual evidence submitted into the record. Plaintiff's claims fail and any surviving dispute belongs in arbitration.

## I. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE AN INJURY-IN-FACT SUFFICIENT TO CONFER ARTICLE III STANDING.

In an attempt to manufacture standing based on inadequate allegations, Plaintiff ignores the limited assertions of harm alleged in her Complaint, and ignores that the Complaint lacks certain critical allegations that might underlie an injury-in-fact but are not present here.

*First*, Plaintiff asserts that FuturHealth relies on an "opportunistic reading of Plaintiff's harms." (Dkt. #19 ("Opp.") at 13.) Pointing to the Complaint's Paragraph 80, she asserts FuturHealth "ignores numerous allegations" about the harm Plaintiff allegedly suffered. (*Id.*) But FuturHealth specifically quoted the four harms alleged in Paragraph 80 (Dkt. #10-1 "MTD" at 4) and detailed how those allegations are insufficient to confer standing. (MTD at 7-8.) In particular, the vague allegation of "other harms related to" alleged disclosure of Plaintiff's information is insufficient to plausibly connect FuturHealth's alleged conduct to any Article III injury-in-fact based on allegedly "highly offensive" conduct.

*Second*, Plaintiff does not dispute that her Complaint alleges *none* of the following harms that could potentially underlie an injury-in-fact: (i) economic harm; (ii) harm stemming from any actual discovery her personal information had

allegedly been "intercepted"; (iii) details regarding the "emotional distress and anxiety" mentioned just once in the entire Complaint, in Paragraph 142.f under Count IV; and (iv) any identity theft resulting from FuturHealth's alleged disclosure of her information.

*Third*, Plaintiff's attempts to disclaim the binding precedent of *Popa v. Microsoft Corporation* are unavailing and require her to insert allegations into the Complaint that do not exist. The core of *Popa*'s holding was that the complaint there failed to "explain how the tracking of her interactions with the [defendant's] website caused her to experience any kind of harm that [was] remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." 153 F.4th 784, 791 (9th Cir. 2025). That holding applies equally here, regardless that *Popa* involved different products than are at issue here. As detailed in FuturHealth's memorandum, the Complaint's allegations that *could* give rise to a "highly offensive" finding are implausibly or conclusorily pled. (*See* MTD at 7-8). This case falls squarely within the ambit of *Popa*.

Plaintiff cites no cases from within this District distinguishing *Popa*. In contrast, FuturHealth relies on two cases from this District supporting a lack of standing: *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *4-6 (S.D. Cal. Nov. 12, 2025), which relied on *Popa* in dismissing web-tracking CIPA claims for lack of Article III standing, and *Wright v. TrueCare Prop. Holdings*, LLC, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025), which dismissed an invasion of privacy claim for failure to plausibly allege details of a "serious intrusion upon privacy." Plaintiff's proffered cases on the standing issue are distinguishable. While *Gabrielli v. Haleon US Inc.* found that the information at issue was "likely more sensitive" than the information in *Popa*, it did not draw any connection between the plaintiff's alleged harm and any traditionally recognized, actionable privacy right. 2025 WL 2494368, at *7-8 (N.D. Cal. Aug. 29, 2025). *Doe v. Shady Grove* did not discuss *Popa* in the context of a standing analysis, and emphasized

that the plaintiff alleged in detail the disclosure of "the most intimate of health and family planning information," stemming from her status as a fertility clinic patient. 2025 WL 2781542, at *5 (D. Md. Sept. 30, 2025). *In Re Ambry* is inapposite. There, a data breach caused medical information to become available to hackers and, thus, potentially to the public at large. 567 F.Supp.3d 1130, 1138, 1143 (C.D. Cal. 2021). None of Plaintiff's case law justifies straying from *Popa*'s controlling authority.

Standing does not automatically exist just because Plaintiff alleges disclosure of health-related information is at issue. Rather, she must plausibly allege how any such disclosure resulted in harm. The Complaint fails to do so.

## II. THE COURT SHOULD DISMISS THE COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).

### A. FuturHealth Did Not "Aid and Abet" Taboola and Is Subject to the Party Exception under CIPA § 631 (Count I).

The Complaint contains just two threadbare, conclusory allegations that parrot the statutory language for an "aiding and abetting" theory of liability and provide no well-pled facts in support of that theory (¶ 89.a, 95.d.)[1] Nonetheless, Plaintiff insists she has adequately pled an aiding and abetting claim under CIPA Section 631. Plaintiff is wrong, and the Court should dismiss this claim.

In asserting the Complaint adequately pleads Count I, Plaintiff points to the Complaint's generic allegations about how pixel trackers work. (Opp. at 15, citing ¶¶ 32-71.) These allegations, and the Complaint as a whole, fail the requirement that an "aiding and abetting" violation must be based on a predicate, separate statutory violation by another party. *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 n.3 (N.D. Cal. Dec. 22, 2023); *Gutierrez v. Converse, Inc.*, 2024 WL 3511648, at *6, 8 (C.D. Cal. July 12, 2024). The Complaint does not set forth any such predicate violation by Taboola. Further, Plaintiff fails to address that the Complaint

---

[1] Citations to " ¶ " reference Paragraphs in the Complaint (Dkt. # 1)

alleges *FuturHealth*, not Taboola, was the party that allegedly "began intercepting communications (¶ 96.b) and "using technology to record [Plaintiff's] answers to sensitive questions." (¶ 79.) Thus, regardless of the allegation that Taboola *later* received some of Plaintiff's information, no underlying CIPA violation *by Taboola* can be reasonably inferred from the Complaint's allegations.

Further, *Valenzuela v. Nationwide Mutual Insurance Co.* and other authority Plaintiff cites do not change the reality that the party exception to Section 631 applies here. For example, *Valenzuela*'s holding turned on whether the alleged "eavesdropping" was "more akin to a party recording a conversation and later sharing it with a third party" or more like "allowing a third party to listen live." 686 F.Supp.3d 969, 980–81 (C.D. Cal. 2023). It found that the plaintiff had "allowed a third-party interloper to listen in on communications in real time." *Id.* In contrast, Plaintiff alleges that "[w]hen a user *finishes* [the] intake quiz" on FuturHealth's website and "proceeds to purchase a product, [FuturHealth] transmits the user's responses to each of these questions to Taboola." (¶ 66) (emphasis added.) This allegation can only be reasonably construed as describing *after-the-fact* transmission to Taboola, rather than the "real time" transmission *Valenzuela* held to be the same as traditional eavesdropping. Thus, Plaintiffs' authority regarding eavesdroppers in the traditional "wiretapping" context is inapplicable here. The party exception remains undisturbed and defeats Plaintiff's Section 631 claim.

### B. Plaintiff's Internet Communications Were Not Confidential under CIPA § 632 (Count II).

Plaintiff does not rebut the presumption that internet communications do not bear a reasonable expectation of being "confidential" within the meaning of Section 632. *Campbell v. Facebook, Inc.*, 77 F.Supp.3d 836, 849 (N.D. Cal. 2014). Instead, Plaintiff points to case law addressing confidential exchanges of information in the patient-medical provider context. But the Complaint does not allege FuturHealth is a medical provider (and it is not one); rather, the Complaint repeatedly describes

FuturHealth as a direct-to-consumer "telehealth" company (¶¶ 4, 32, 139-140, 142, 153.d), and contains 14 paragraphs describing the telehealth industry. (¶¶ 18-31.) Plaintiff's case law is therefore inapposite and does not rebut the presumption that Plaintiff's alleged internet communications were not confidential.

*In re Meta Pixel Healthcare Litig.* held only that "health-related communications *with a medical provider* are almost uniquely personal." 647 F.Supp.3d 778, 798 (N.D. Cal. 2022) (emphasis added). It said nothing about communications channeled through a commercial telehealth company's website. Indeed, *Swarts v. Home Depot, Inc.* dismissed a Section 632 claim and distinguished on this basis, finding that "the context of a patient-medical provider relationship" was "readily distinguishable" from a communication with a customer service agent. 689 F.Supp.3d 732, 747 (N.D. Cal. 2023). Further, *Yockey v. Salesforce, Inc.* assessed allegations involving a chat feature on the website of Kaiser Permanente—a major medical provider—and held that "the context of these communications render[ed] them confidential." 688 F.Supp.3d 962, 973 (N.D. Cal. 2023). Plaintiff cites no case law equating confidential patient-medical provider communications with voluntary completion of commercial telehealth company's website questionnaire. Thus, *In re Meta Pixel* and *Yockey* do not apply. Here, Plaintiff allegedly provided information to FuturHealth, a telehealth company with which she had never previously interacted. (Dkt. #19-2 at ¶ 3.) That alleged communication is distinct from those at issue in confidential patient-medical provider cases. The Court should dismiss Count II.

### C. Plaintiff Fails to Adequately Allege any Crime-Tort Exception under the Wiretap Act (Count III).

Plaintiff does not dispute that, absent application of the crime-tort exception, her Wiretap Act claim is barred because FuturHealth was an intended party to the alleged communication. Accordingly, Count III's survival rests on whether Plaintiff has plausibly pled facts underlying the crime-tort exception. She has not.

Plaintiff's arguments ignore the crime-tort exception's key tenet: "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis added) (citation omitted). Plaintiff gets this analysis backwards: she imputes that, because the alleged interception *resulted* in an alleged tort violation (namely, an alleged HIPAA violation), the interception was necessarily for a tortious purpose. But the Complaint does not actually allege such a tortious *purpose* anywhere. Instead, as detailed in FuturHealth's memorandum, the alleged "purpose" here related to commercial aims. (MTD at 14 (citing ¶¶ 3, 7, 28, 58, 95.c.)) To be sure, in some circumstances financial gain and tortious or criminal motivation can go hand in hand. Not here. The Complaint unambiguously describes FuturHealth's aims as commercial, not nefarious. *See Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971) (crime-tort exception requires that "purpose is evil").

Perhaps recognizing the Complaint does not contain allegations supporting any crime-tort exception, Plaintiff inexplicably relies on case law describing the use of intercepted communications to make money through blackmail. (Opp. at 18.) This line of authority is untethered to any allegation in the Complaint. Plaintiff does not attempt to explain how those cases are relevant here. Count III fails because the Complaint alleges no criminal or tortious purpose.

### D. Plaintiff Fails to Adequately Plead a Claim under the New York Deceptive Trade Practices Act (Count IV).

Though Plaintiff cites to other cases in which plaintiffs adequately pled NYDTPA claims based on health-related information, she does not dispute that she "must set forth where, when and how [she] came to view" any allegedly misleading statement from FuturHealth. *In re Unite Here Data Sec. Litig.*, 740 F.Supp.3d 364, 387 (S.D.N.Y. 2024) (citation omitted). The portions of the Complaint to which Plaintiff points are generic allegations that largely parrot the claim's elements, but

do not set forth any well-pled details about *how* FuturHealth allegedly made any misleading statements or omissions to Plaintiff nor *how* Plaintiff viewed them. (*See* ¶¶ 3, 75, 135, 141.) Similarly, Plaintiff does not plead FuturHealth knew its disclosures were inadequate or materially misleading. *See Baton v. Ledger SAS*, 740 F.Supp.3d 847, 916 (N.D. Cal. 2024). She pleads only that FuturHealth allegedly "knew it failed to disclose" that health-related communications "would be disclosed to Taboola" (¶ 137), not that FuturHealth knew of the purportedly misleading nature of its actions. The Complaint therefore inadequately pleads Count IV as a matter of law.

**E. Plaintiff Cannot Sustain an Independent Claim for Unjust Enrichment (Count V).**

Plaintiff cites no authority from within this District supporting that she can bring her unjust enrichment claim as an independent cause of action. In contrast, FuturHealth's memorandum cited to authority from this Court holding that unjust enrichment claims where liability "rise[s] or fall[s] with [the] statutory claims" must be dismissed. *Lee v. Nature's Path Food, Inc.*, 2023 WL 7434963, at *6 (S.D. Cal. Nov. 9, 2023) (Huff, J.) (citation omitted). Plaintiff argues only that the *relief* she seeks under Count V is different. Pursuant to this Court's previous holding, that is irrelevant. The Court should do what it did in *Lee* and dismiss this claim.

## III. FUTURHEALTH HAS PRESENTED SUFFICIENT EVIDENCE TO COMPEL ARBITRATION AS AN ALTERNATIVE TO DISMISSAL.

**A. FuturHealth Is Not Required to Adduce Records Specific to Plaintiff's Website Access and Demonstrate Actual Notice.**

Plaintiff's opposition to the alternative relief of arbitration rests on an unsupported "actual notice" standard created out of thin air. Plaintiff asserts FuturHealth must demonstrate that Plaintiff "was aware of FuturHealth's Terms" and that FuturHealth must provide specific records showing the exact moment of her assent to arbitrate "at a particular time and on a particular date." (Opp. at 23).

No case law requires that exacting evidentiary burden, and Plaintiff cites none supporting such a standard.

Plaintiff concedes that, under controlling authority, "either actual *or inquiry notice*" is sufficient. (Opp. at 24) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)) (emphasis added). Yet she then cites *Platt v. Sodexo, S.A.*, arguing FuturHealth must adduce detailed, Plaintiff-specific records showing actual notice. (Opp. at 22.) *Platt* does not support this. 148 F.4th 709 (9th Cir. 2025). There, the court denied a motion to compel arbitration because the defendant could not produce a copy of the email it claimed to have sent to its employees, including the plaintiff. *Id.* at 718. That is a far cry from this case, where FuturHealth has provided ample evidence through its Chief Operating Officer's declaration showing the website interfaces Plaintiff would have necessarily encountered based on the time period alleged in her Complaint. (*See* Dkt. #10-2.)

Plaintiff's further attacks on the motion to compel arbitration and FuturHealth's supporting declaration rely on immaterial declaration testimony. Specifically, Plaintiff's declaration repeatedly states she "do[es] not recall" encountering the consent screen, clicking the checkbox, or clicking the button to proceed and view her results. (Dkt. 19-2 at ¶¶ 6-9.) Similarly, the declaration of Plaintiff's counsel, which purports to describe FuturHealth's website in November *2025* (Dkt. #19-1 at ¶ 3), is irrelevant to whether Plaintiff assented to the online Arbitration Agreement a year earlier in October 2024, when she allegedly accessed FuturHealth's website and completed the questionnaire. (¶¶ 73-74.) Plaintiff's proffered declarations provide no evidence that FuturHealth's declaration is "misleading or inaccurate" (Opp. at 23) in any way.

### B. FuturHealth Provided Conspicuous Notice to All Website Users, Including Plaintiff.

Plaintiff relies on an inaccurate characterization of FuturHealth's website to argue that FuturHealth failed to provide conspicuous notice of the Arbitration

Agreement. For example, her Opposition includes an image of FuturHealth's website that appears smaller-scale and substantially blurrier than it appeared in FuturHealth's supporting declaration. (*Compare* Opp. at 28 *with* Dkt. #10-2 at ¶ 7.) This makes FuturHealth's notice appear less conspicuous than it actually was.

Plaintiff's case comparisons fare no better. The notice website page clearly visible within FuturHealth's declaration is readily distinguishable from the insufficient notice in *Berman v. Freedom Financial Network*. Despite claiming to include the "relevant portion of a screenshot" from that case, Plaintiff's embedded image omits most of the notice website page that the *Berman* court found insufficient. (*Compare* Opp. at 27 *with* Ex. 1); *see also* 30 F.4th at 861 (providing full, unedited screenshot of website page). As seen in the full version of that website page, the notice language in *Berman* was buried in a lengthy, chaotic website page, in a considerably smaller font than any of the text requesting input of users' information. (Ex. 1.) The *Berman* court rightly described that notice as "barely legible" when considered with the "surrounding website elements." 30 F.4th at 856.

In contrast, FuturHealth's notice text was substantially similar in size and font to the "Enter your info to see your results now" text and the text prompting users to input their first name, last name and email address. (Dkt. #10-2 at ¶ 7.) The eye test contradicts Plaintiff's claim that this notice text was in "tiny font." (Opp. at 27-28.) Further, the underlined, hyperlinked words "terms of service" and "privacy policy" support the adequacy of notice. *Cullors v. Cerebral, Inc.*, 2024 WL 3385530, at *1 (9th Cir. July 12, 2024).

### C. Plaintiff, Like All Other Similarly Situated Website Users, Unambiguously Manifested Assent.

Plaintiff asserts that FuturHealth's supporting declaration shows a "pre-checked box" where users manifested their assent to arbitrate. (Opp. at 25 n.8, 29.) This argument contradicts the image in FuturHealth's declaration and defies logic. (*See* Dkt. #10-2 at ¶ 7.) To access any information regarding her prescription plan

results after she "completed the initial [questionnaire]" (¶ 74), Plaintiff would have been required to actively click the box directly next to the hyperlinked statement that she "agree[d] to the terms of service and privacy policy." (Dkt. #10-2 at ¶¶ 7-9.) Thus, she was "explicitly advised that the act of clicking [would] constitute assent to" the Terms of Use containing the Arbitration Agreement. *Cullors*, 2024 WL 3385530 at *3–4; *Chabolla v. Classpass, Inc.*, 129 F.4th 1147, 1158 (9th Cir. 2025).

### D. FuturHealth Did Not Obtain Any Assent Via Fraud and An Arbitrator, Not the Court, Must Consider this Defense.

Finally, Plaintiff alleges that any purported assent was obtained via fraud. (Opp. 29-31.) This unsupported allegation has no merit. To demonstrate fraud under California law, plaintiff must prove actual reliance. *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 180 (2003). Notably, Plaintiff does not assert in her declaration that she would have done anything differently in navigating the FuturHealth website, voluntarily completing the questionnaire, and accessing other pages of that website had she known of the alleged sharing of information with Taboola. (*See* Dkt. #19-2.) Thus, reliance is absent and Plaintiff's assertion of fraud fails. Additionally, the Arbitration Agreement incorporates the AAA Rules (Dkt. #10-2 at 23-24.) This is "clear and unmistakable evidence" that the parties intended to delegate to an arbitrator the issues of arbitrability—like unconscionability or, as here, a fact-intensive determination of whether "fraud" induced the arbitration. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

## IV. CONCLUSION

For the reasons set forth above, and those set forth in FuturHealth's opening memorandum, the Court should enter an order dismissing the Complaint in its entirety. In the alternative, the Court should enter an order compelling arbitration of any surviving claims and staying all proceedings pending such arbitration.

DATED: April 3, 2026.

Respectfully submitted,

FOLEY & LARDNER LLP

By: /s/ *Brooke Clarke*

Brooke Clarke
E-mail: bclarke@foley.com

Joseph W. Swanson (admitted *pro hac vice*)
E-mail: joe.swanson@foley.com

Mason D. Roberts (admitted *pro hac vice*)
E-mail: mroberts@foley.com

*Attorneys for Defendant FuturHealth, Inc.*

# EXHIBIT 1

Appendix A—Continued

Appendix B




BAKER, Judge, concurring:

I join Parts I and III of Judge Watford's opinion for the Court. Although my colleagues and I reach the same destination, I would take a different route, one that first walks through the applicable choice-of-law analysis and then, based on that analysis, relies more on recent decisions of the California Court of Appeal. Those decisions establish that the websites here contain "sign-in wrap" agreements, which—as this case illustrates—tempt fate under California law.

I

"In determining the validity of an agreement to arbitrate, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) (cleaned up and quoting *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)). The first issue here is what body of state law governs whether the parties agreed to arbitration. The parties agree that California and New York are the options and further agree that there is no material difference between the applicable law of those jurisdictions. But when asked at argument which state's law would apply if forced to choose, plaintiffs asserted California and defendants asserted New York. My colleagues decline to decide this issue because, like the parties, they conclude that both California and New York law dictate the same outcome. *Ante* at 855 (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014)).

I am not sure this is correct at the margins in this evolving and fact-bound area. I also think that due respect for state courts should lead us to begin by identifying the relevant jurisdiction and then determining its law as enunciated by those courts. *Cf.* 19 Wright & Miller, *Federal Practice and Procedure* § 4507 (3d ed. 2021) ("Because of the important federalism concerns implicated in the application of state law by the federal courts, the accurate ascertainment of that law is ex-