Victor J. Sandoval (SBN 344461)
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd., Suite 1121
Los Angeles, California 90034
t: (562) 534-5907
victor@almeidalawgroup.com

David S. Almeida*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: (708) 529-5418
david@almeidalawgroup.com

*Attorneys for Plaintiff & the Putative Classes*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA HICKEY, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>FUTURHEALTH, INC.,<br><br>Defendant. | Case No.: 3:25-cv-03051-H-DDL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. SECTION 2511(1), *et seq.*;<br>2. VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT, CAL. PENAL CODE §§ 631, *et seq.*;<br>3. VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT, CAL. PENAL CODE §§ 632, *et seq.*;<br>4. VIOLATION OF NEW YORK DECEPTIVE TRADE PRACTICES ACT, NY GBL § 349 *et. seq.*;<br>5. UNJUST ENRICHMENT<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Rebecca Hickey, individually and on behalf of all others similarly situated ("Plaintiff"), brings this first amended class action lawsuit against Futurhealth, Inc. ("Futurhealth" or "Defendant") and alleges, upon personal knowledge as to her own actions and her counsel's investigation and upon information and good faith belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This class action lawsuit addresses Defendant's surreptitious use of tracking technologies on its Website that capture and disclose users' personally identifiable information ("PII") and protected health information ("PHI") (collectively referred to as "Private Information") to third-party advertising platforms and data analytics companies such as Taboola, Facebook and Google.

2. When users seek weight loss treatment and pharmaceutical products through the Website, they reasonably expect that their sensitive health information—including prescription medications and medical histories—will remain confidential between them and their healthcare providers.

3. However, unbeknownst to them, this Private Information has been harvested by Futurhealth and intentionally provided to technology companies and data brokers for a litany of commercial purposes.

4. Defendant owns, maintains, and controls the website www.fh.co along with its related domains and its subpages (collectively, the "Website"). The Website targets individuals seeking weight management and weight loss treatment and allows them to solicit telehealth services and health products, especially GLP-1 products.[1]

---

[1] GLP-1 (glucagon-like peptide-1) products are a class of medications that mimic a naturally occurring hormone to treat type 2 diabetes mellitus and obesity. These medications work by lowering blood sugar levels, stimulating insulin release from the pancreas, slowing gastric emptying to reduce appetite, and promoting feelings of fullness. Common examples include semaglutide (marketed as Ozempic and Wegovy) and tirzepatide (marketed as Mounjaro and Zepbound). *See* Logan Collins

1

FIRST AMENDED CLASS ACTION COMPLAINT

5.      As a healthcare provider handling sensitive medical information, Defendant has an obligation to protect the privacy and confidentiality of PII and PHI in its possession.

6.      This obligation is mandated by federal and state law, including the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Defendant portrays itself as a HIPAA-compliant entity, advertising compliance with HIPAA standards on its Website.[2]

7.      Despite these obligations, Defendant has systematically violated its users' privacy rights by using tracking technologies in its Website that capture and transmit Private Information to third parties for marketing and analytics purposes including, but not limited to, selling Private Information to advertisers, profiling users without their knowledge, targeting users with advertisements based on their medical conditions, and other improper uses of users' Private Information.

8.      These transmissions of sensitive, individually identifiable data occur throughout the Website, including on the home page as well as intake pages, introductory quizzes. Any sensitive information entered on a specific page is automatically passed to third parties as soon as the information is entered.

9.      These disclosures occur without Website users' knowledge, consent, or authorization, in direct violation of federal and state privacy laws.

10.     The unauthorized disclosure of medical information is a fundamental breach of trust in any relationship between one party seeking care and another purporting to offer it.

11.     This class action lawsuit seeks to remedy the harms foisted on

---

& Ryan A. Costello, *Glucagon-Like Peptide-1 Receptor Agonists*, StatPearls (Feb. 29, 2024), https://www.ncbi.nlm.nih.gov/books/NBK551568/.

[2] *See Privacy Policy,* https://fh.co/ol-privacy/?v=MzA6MTQ (last visited Nov. 7, 2025) ("It is the intent of FuturHealth…to comply with all provisions of the Health Insurance Portability and Accountability Act ('HIPAA')[.]"

2

FIRST AMENDED CLASS ACTION COMPLAINT

Futurhealth's Website users by obtaining relief for Plaintiff and other affected parties whose privacy rights have been violated through the unauthorized collection and disclosure of their Private Information.

12. Accordingly, Plaintiff asserts individual and representative claims for: (i) violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*; (ii) violations of the California Invasion of Privacy Act, Cal. Penal Code § 631; (iii) violations of the California Invasion of Privacy Act, Cal. Penal Code § 632; (iv) violations of the New York Deceptive Trade Practices Act, NY GBL § 349; and (v) unjust enrichment.

## PARTIES

13. Plaintiff Rebecca Hickey is an adult citizen who lives, and at all relevant times has lived, in New York, New York, and who used the Website in 2024.

14. Defendant Futurhealth, Inc. is a corporation incorporated and existing under the laws of the State of Delaware with its principal place of business located at 325 W Washington St., Ste 2 944, in San Diego, California 92103.

## JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action lawsuit wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the classes (*e.g.*, Plaintiff) is a citizen of a state different from Defendant.

16. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in San Diego, California, and conducts significant operations in this judicial District.

17. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant has caused harm to Plaintiff and Subclass Members residing in this District.

FIRST AMENDED CLASS ACTION COMPLAINT

18.     Defendant, as a provider of health services and medical products and a trustee of sensitive medical information, is a HIPAA-covered entity.

## FACTUAL ALLEGATIONS

## I.     DATA TRACKING IN THE TELEHEALTH INDUSTRY.

19.     The market for glucagon-like peptide-1 (GLP-1) medications has experienced explosive growth in recent years, with approximately 20 million Americans using drugs like Wegovy, Ozempic, Mounjaro, and Zepbound for weight loss and diabetes management.[3]

20.     Perhaps not surprisingly then, the market for companies such as Ro, Hims & Hers, Calibrate, Noom, and others that offer virtual prescriptions and access to these medications is extremely competitive.[4]

21.     These telehealth companies rely heavily on digital advertising for customer acquisition, and many of them use website tracking technologies to measure advertising effectiveness and retarget prospective patients.[5]

22.     A December 2022 investigation by journalists at *The Markup* and STAT News examined 50 direct-to-consumer telehealth companies and found that 49 had third-party tracking code with the potential to collect and to share sensitive health data with various Adtech platforms such as Facebook and Google, among many

[3] Gabby Landsverk, *A Guide to Navigating the Wild West of the Online GLP-1 Market,* MEN'S HEALTH (July 2, 2025), https://www.menshealth.com/health/a65013285/online-glp-1-market/ (last visited Nov. 3, 2025).

[4] Katie Palmer, *How Digital Health Companies Are Capitalizing on the GLP-1 Boom*, CNBC (May 25, 2024), https://www.cnbc.com/2024/05/25/digital-health-companies-are-launching-programs-around-glp-1s-.htm (last visited Nov. 3, 2025).

[5] Emily Baumgaertner, *Cerebral, Telehealth Startups Face Privacy Pushback over Ad Models*, STAT NEWS (Mar. 22, 2023), https://www.statnews.com/2023/03/22/cerebral-lawsuit-privacy/ (last visited Nov. 3, 2025).

4

FIRST AMENDED CLASS ACTION COMPLAINT

others.[6]

23.    On 13 websites, trackers from Meta, Google, TikTok, and other platforms collected patients' answers to medical intake questions about health conditions, medications, and treatment needs.[7]

24.    On 25 telehealth sites—including those operated by Hims & Hers, Ro, and Thirty Madison—tracking codes informed tech platforms when users added prescription medications to shopping carts or completed treatment subscriptions.[8]

25.    Recognizing the sensitivity of the data shared on telehealth sites and the potential for misuse of this information, federal regulators have aggressively pursued telehealth companies for improper data sharing.

26.    The FTC, for example, has reached major settlements with BetterHelp ($7.8 million for sharing mental health data with Facebook, Snapchat, and Pinterest),[9] GoodRx ($1.5 million for sharing prescription data with Facebook and Google),[10] and

---

[6] Todd Feathers *et al.*, *"Out Of Control": Dozens of Telehealth Startups Sent Sensitive Health Information to Big Tech Companies*, THE MARKUP (Dec. 13, 2022), https://themarkup.org/pixel-hunt/2022/12/13/out-of-control-dozens-of-telehealth-startups-sent-sensitive-health-information-to-big-tech-companies (last visited Nov. 3, 2025).

[7] *Id.*

[8] *Id.*

[9] *Fed. Trade Comm'n, FTC Proposed Order Prohibits BetterHelp from Revealing Consumers' Data, Including Sensitive Mental Health Information, to Facebook and Others* (Mar. 2, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/03/ftc-proposed-order-prohibits-betterhelp-revealing-consumers-data-including-sensitive-mental-health (last visited Nov. 3, 2025).

[10] *Fed. Trade Comm'n, FTC Enforcement Action Bars GoodRx from Sharing Consumers' Sensitive Health Info for Advertising* (Feb. 1, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/02/ftc-enforcement-action-bars-goodrx-sharing-consumers-sensitive-health-info-advertising (last visited Nov. 3, 2025).

5

FIRST AMENDED CLASS ACTION COMPLAINT

Cerebral (affecting 3.1 million patients whose data was shared with Meta, Google, and TikTok).[11]

27.    In July 2023, the FTC and HHS Office for Civil Rights jointly warned 130 hospital systems and telehealth providers about privacy risks from tracking technologies.[12]

28.    Despite these enforcement actions, telehealth providers continue to extract and sell user data to third parties for advertising purposes, exploiting the popularity of their products and the sensitivity of their customers' needs in order to profit through undisclosed third-party advertising integrations.

29.    Medical and health data is one of the most valuable commodities in the digital economy. Industry analysts estimate that the global healthcare data market exceeded $34 billion in 2022 and is projected to reach $105 billion by 2030, representing a compound annual growth rate of over 15%.[13]

30.    Individual health records command premium prices in both legitimate and illicit markets, valued as much as fifty times more than credit card information due to

---

[11] *Pixel Use Results in Impermissible Disclosure of the PHI 3.1 Million Cerebral Platform Users*, HIPAA JOURNAL (Mar. 13, 2023), https://www.hipaajournal.com/cerebral-impermissible-disclosure-pixel-3170000/ (last visited Nov. 3, 2025).

[12] *Fed. Trade Comm'n, FTC and HHS Warn Hospital Systems and Telehealth Providers About Privacy and Security Risks from Online Tracking Technologies* (July 20, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-hhs-warn-hospital-systems-telehealth-providers-about-privacy-security-risks-online-tracking (last visited Nov. 3, 2025).

[13] *See Healthcare Analytics Market To Reach $167.0 Billion By 2030*, https://www.grandviewresearch.com/press-release/global-healthcare-analytics-market (last visited Nov. 3, 2025).

FIRST AMENDED CLASS ACTION COMPLAINT

their comprehensive nature and permanence.[14]

31. Third-party data brokers that are embedded in health apps and websites are extremely interested in this valuable data, which they use to create detailed psychographic profiles for targeted advertisements and predictive modeling, and which can be sold and resold to advertisers, social media companies, or hackers who may use this data to orchestrate social engineering attacks.[15]

## II. USERS' SENSITIVE INFORMATION, INCLUDING MEDICAL DATA, IS SOLICITED BY AND DIVULGED TO DEFENDANT THROUGH THE WEBSITE.

32. Defendant owns and operates the Website as a telehealth platform that provides virtual weight loss consultations and prescription services for weight management medications.

33. Thousands of people rely on Defendant and its services, including the Website, as their primary conduit to weight loss treatment and related health services.

34. The Website is marketed as offering specialized weight loss programs with access to prescription medications like GLP-1 agonists, providing weight management solutions.

35. The Website's services purport to include: (a) online consultations with healthcare providers; (b) prescription weight loss medications; (c) ongoing weight management support; and (d) personalized treatment plans based on individual health profiles.

36. Unlike traditional healthcare providers who collect patient information after establishing a provider-patient relationship, the Website requires users to submit detailed health information through comprehensive onboarding quizzes before they

---

[14] *See* Herjavec Group, *2021-2022 Healthcare Cybersecurity Report*, https://3447277.fs1.hubspotusercontent-na1.net/hubfs/3447277/2021-Healthcare-Cybersecurity-Report.pdf (last visited Nov. 3, 2025).

[15] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

can create an account, review any privacy policies, or access services.

37.    The Website contains numerous first- and third-party tracking implementations that measure and record user data, including tracking pixels from Taboola, Inc. ("Taboola") embedded throughout the Website's onboarding processes.

38.    Taboola operates as a sophisticated digital advertising network deploying comprehensive tracking technologies across third-party websites through its content discovery platform and programmatic advertising services.

39.    Taboola provides website operators with a suite of tracking and analytics tools, including the Taboola Pixel, Taboola Ads Manager, Conversion API, and third-party tag integrations.[16]

40.    The Taboola Pixel consists of two primary components: the Base Code that serves as the foundation for tracking traffic and funnel events like site visits, and Event Code designed to capture events defined by the website operator.[17]

41.    Beyond the Base Code, Taboola requires website operators to install Event Code on specific pages where conversion events occur, tracking actions such as purchases, sign-ups, add-to-cart events, and content views.

42.    These Event Codes capture granular details about user interactions and transmit them to Taboola's servers in real-time.

43.    The platform's documentation permits first-party cookie storage of the Click ID parameter to measure conversion events, indicating a persistent tracking

[16]    *Conversion Tracking Overview*, https://developers.taboola.com/pixel/docs/conversion-tracking-overview (last visited Nov. 2, 2025); *Add Event Pixels Manually*, https://developers.taboola.com/pixel/docs/add-event-pixels-manually (last visited Nov. 2, 2025).

[17]    *Add the Base Pixel Manually*, https://help.taboola.com/hc/en-us/articles/360007856794-Developer-Notes (last visited Nov. 2, 2025); Taboola Pixel Overview, https://help.taboola.com/hc/en-us/articles/360003469854-Taboola-Pixel-Overview (last visited Nov. 2, 2025).

8

FIRST AMENDED CLASS ACTION COMPLAINT

mechanism that follows users throughout their browsing session.[18]

44.   Taboola's pixel tracking extends beyond cookies through its Conversion API, which enables server-to-server integration that completely bypasses browser-based privacy controls.

45.   This server-side tracking ensures that even users who have blocked JavaScript, disabled cookies, or installed ad blockers can still be tracked, as the data transmission occurs directly between website servers and Taboola's servers without any client-side interaction.[19]

46.   Taboola's tracking capabilities enable collection of multiple personally identifiable information types. The platform's Conversion API documentation reveals that Taboola collects and processes hashed email addresses, hashed phone numbers, IP addresses, user agent strings, and the Click ID for user matching and attribution.[20]

47.   Taboola's tracking platform employs a dual-layer identification system that extends its tracking reach beyond its own user base. For users logged into Taboola accounts, the platform's pixels automatically identify individuals through first-party cookies and the Click ID parameter.

48.   However, Taboola's tracking infrastructure captures individuals regardless of whether they have Taboola accounts through its Conversion API, which allows website operators to transmit email addresses, phone numbers, IP addresses,

---

[18]   *How to Set Up and Track CRM-Based Conversions*, https://www.taboola.com/help/en/articles/3878132-how-to-set-up-and-track-crm-based-conversions (last visited Nov. 3, 2025).

[19]   *How to Track Conversions Using Server-to-Server Integration (S2S)*, https://www.taboola.com/help/en/articles/10660530-how-to-track-conversions-using-server-to-server-integration-s2s (last visited Nov. 3, 2025).

[20] *Customer Information Parameters: Additional Customer Attributes Used to Help the System Match a Conversion Event Back to Their Users and Devices (E.g., Email, Phone, Mobile Ad IDs, and Click IDs)*, https://hightouch.com/blog/how-to-set-up-taboola-conversion-api (last visited Nov. 3, 2025).

9

FIRST AMENDED CLASS ACTION COMPLAINT

and user agent strings directly to Taboola's servers.[21]

49.    Individuals who have never created Taboola accounts can still be tracked and identified when they provide their email or phone number for any purpose on a website that transmits this information to Taboola. This creates a comprehensive tracking network where both Taboola users and non-users can be monitored across the web through multiple identification vectors.[22]

50.    Like other tracking pixels, Taboola's technology operates invisibly to users.

51.    The pixel consists of JavaScript code that website operators embed in their HTML, which loads automatically when users visit pages without any visible indication.

52.    Users have no way of knowing their behavior is being monitored, their email addresses are being collected, or their interactions are being transmitted to Taboola's servers.[23]

53.    Taboola's tracking extends beyond the initial interaction through configurable attribution windows. The platform offers "post-engagement attribution windows" of up to 90 days, meaning that user actions can be tracked and attributed to Taboola advertisements for three months after any interaction.

54.    During this extended period, all user behavior on websites with Taboola Pixels installed is monitored and linked back to their initial engagement with Taboola advertisements.

[21]   *How to Set Up the Taboola Conversions API?*, (Apr. 2, 2025), https://hightouch.com/blog/how-to-set-up-taboola-conversion-api (last visited Nov. 3, 2025).

[22]   *Privacy Policy*, https://www.taboola.com/policies/privacy-policy (last updated April 10, 2026).

[23]   *Taboola Pixel Overview*, https://help.taboola.com/hc/en-us/articles/360003469854-Taboola-Pixel-Overview (last visited Nov. 3, 2025).

10

FIRST AMENDED CLASS ACTION COMPLAINT

55. Beyond standard behavioral tracking, the Taboola Pixel's Event Code can be configured to capture custom input data entered by users on a website, including names, email addresses, and phone numbers.[24]

56. Website operators implement custom parameters within the Event Code to transmit user-submitted information directly to Taboola's servers whenever users interact with forms, input fields, or other data collection elements on the site.

57. This functionality enables Taboola to receive and process sensitive personal information beyond standard behavioral tracking metrics, creating detailed user profiles that link specific individuals to their browsing activities and on-site interactions.

58. Such custom data collection occurs automatically upon user interaction with the configured elements, and users entering their email address or phone number into a website form have no indication that this information will be simultaneously captured by Taboola's tracking technology and shared with the advertising platform for advertising purposes, including the platform's independent purposes.[25]

59. Taboola's comprehensive tracking infrastructure—combining Base Code on every page, Event Codes for specific actions, Click ID tracking, first-party cookies, server-side APIs, and multiple personally identifiable information types—creates an environment where sensitive user data can be easily collected and transmitted to Taboola's servers, particularly when deployed on websites handling health, financial, or other sensitive information.[26]

---

[24] *Submitting First Party Data*, https://developers.taboola.com/pixel/docs/submitting-first-party-data (last visited Nov. 3, 2025).

[25] *Tracking Dynamic Conversion Values*, https://help.taboola.com/hc/en-us/articles/360009027493-Tracking-Dynamic-Conversion-Values (last visited Nov. 3, 2025).

[26] *Taboola Pixel Overview*, https://help.taboola.com/hc/en-us/articles/360003469854-Taboola-Pixel-Overview (last visited Nov. 3, 2025)

11

FIRST AMENDED CLASS ACTION COMPLAINT

## III. WEBSITE USERS' PRIVATE INFORMATION IS INTERCEPTED BY THE TRACKING TOOLS WITHOUT USERS' CONSENT.

60. Defendant maintains and owns the Website and has made the conscious and intentional decision to install Taboola within its Website, thereby allowing it, among others possible third-party interceptors, to intercept and to collect all user interactions, including responses to sensitive health screening questions-in real-time.

61. Individuals who visit the Website are not immediately presented with the option to create an account and do not pass a link to any terms of use, privacy policy or any other page where tracking activities are disclosed.

62. Rather, upon accessing the Website, the user is immediately presented with the screen below.



(describing the Taboola Pixel as "a javascript code that you implement on your website" that "gathers data about users behavior and actions on your website, like page visits, account creation, purchases, time per session, and many more"); *Add the Base Pixel Manually*, https://help.taboola.com/hc/en-us/articles/360007856794-Developer-Notes (last visited Nov. 3, 2025) (providing base pixel code implementation); *Pixels: Tracking Your Audience Across the Web (and Email)* (June 22, 2025), https://www.taboola.com/marketing-hub/pixel/ (last visited Nov. 3, 2025) (explaining that tracking pixels collect "IP address, browser type, device information, and actions on the page").

12

FIRST AMENDED CLASS ACTION COMPLAINT

63.   As the above images show, users visiting the Website are induced to click the button labelled "See if You Qualify" before they see or have an opportunity to review any terms of service or privacy policy.

64.   Users who click this button are then directed to a survey, through which they answer questions on sensitive health topics used to determine a user's eligibility for GLP1 products. Examples of these questions are as reproduced below:

13

FIRST AMENDED CLASS ACTION COMPLAINT

65. Users are also asked to input their email and phone number before completing the quiz.



66. As a user progresses through the intake quiz, Defendant transmits the user's responses to Taboola after each and every page of the quiz, regardless of whether the user ever adds a product to cart or completes a purchase.

67. Specifically, after each quiz page that a user completes and submits, the user's cumulative responses are encoded in a JSON Web Token (JWT) that is appended to the URL of the next page in the quiz flow, and that JWT is transmitted to Taboola via the Taboola pixel embedded on that page.

68. These encoded URLs are transmitted after each passed page, which means that identifiable user data is transmitted after each quiz page completed by the user, regardless of whether he or she ultimately makes a purchase or even completes the quiz.

69. In additional to the quiz on the Website, the Taboola tracking technology is also embedded on product pages and checkout pages, meaning that if the user later adds a product to cart or proceeds to purchase, those add-to-cart and purchase events

14

FIRST AMENDED CLASS ACTION COMPLAINT

are also transmitted to Taboola in addition to (not instead of) the per-page transmissions of the quiz responses already made.

70. The transmitted JWT token uses base64url encoding—an easily reversible encoding that provides no encryption or privacy protection whatsoever.

71. As shown in the screenshots below, which include the token visible in a user's web traffic and the decoded view of this token, the Taboola pixel receives and logs the complete JWT token containing the user's full name, email address, sensitive health information including current weight, goal weight, and prescribed medication type; and specific treatment details including medication name (Zepbound), dosage form, and treatment duration. This data is transmitted in cleartext within the base64url-encoded JWT payload, meaning Taboola—and any party with access to Taboola's server logs—can decode and read this highly sensitive medical information with trivial effort.

### Summary

URL: https://trc-events.taboola.com/1682104/log/3/unip?en=pre_d_eng_tb&tos=40082&scd=100&s
sd=1&est=1762199182505&ver=36&isls=true&src=i&invt=10000&msa=328&rv=2&tim=1762199
222587&vi=1762199182504&ri=a1a5e550b9848b43626f4bec058fbd91&sd=v2_2a6a639051c3
dad496bc578b55b19d8a_b8252e52-d6fc-476d-9271-bd28904867bd-tuctffe987f_1762199182
_1762199182_CNawjgYQuNVmGKi5htqkMyABKAQw4QE4kaQOQJ3RDkjshtgDUNoEWABgAGidku
nOyf_X9XdwAYABAA&ui=b8252e52-d6fc-476d-9271-bd28904867bd-tuctffe987f&ref=null&cv=
20251103-1-RELEASE&item-url=https%3A%2F%2Fcheckout.fh.co%2Forder%3Ftoken%3DeyJ0e
XAiOiJKV1QiLCJhbGciOiJFUzUxMiIsImtpZCI6InBnMnZKTmNZVzRvcmREZnE0aExCSHlRdktnY01k
ZmFBX0FzU09JVmdNNzAifQ.eyJpc3MiOiJGdXR1ckhlYWx0aCIsIm5iZiI6MTc2MjE5OTE1MiwiZXh
wljoxNzYyMjAyNzgyLCJpYXQiOjE3NjIxOTkxODIsImNoZWNrb3V0X2RhdGEiOnsiZGlzcXVhbGma
WVkljpmYWxzZSwiZW1haWwiOiJzbml0LXJpdHVhbHHMuN2IAaWNsb3VkLmNvbSIsImZ1bGxfbmFt
ZSI6ImVyaWMgemFuZHJvdylsIm1vbnRocyl6NiwibW9vbl9hZmaWQiOiliLCJtb29uX29mZmVyX2l
kljoic21kLXplcGltdmhbCIsIm1vb25fc2Vzc2lvbl9pZCI6ljI4VGlGc1F3V2lWcG9xRUZCTENGdFowvTkI
mTmRVYVJOliwicGxhdGZvcm0iOiJmdXR1cmhlYWx0aF9wbHVzliwicG9zdGhvZ19kaXN0aW5jdF99
pZCI6IjAxOWEwZjM3LTNlMzgtN2VmMi1hNzFmLWI0MDkxMTg2ZDNkOSIsInBvc3Rob2dfc2Vzc2lv
bl9pZCI6IjAxOWEzYjIlLWE1ODEtN2ZiNi04MjgyLTI4YTM1NWM2MmMxZSIsInByb2R1Y3RfaWQiOiJ
saWxseWRpcmVjdjC16ZXBib3VuZC1zcGxpdC1tb250aGx5liwicmV0dXJuX3VybCI6Imh0dHBzOi8v
cGx1cy5maC5jby9hY2NvdW50P3N1cnZleVNlc3Npb25JZD0wODQ1MDYyOS1hNjUwLTQzZDAtOG
NjMC0yMTg4ODQyNTBlODDIiLCJzdXJ2ZXlfc2Vzc2lvbl9pZCI6IjA4NDUwNjI5LWE2NTAtNDNkMC0
4Y2MwLTIxODg4NDI1MGU4MilsInVzZXJfaWQiOiJWS3A5QzV0TjJkV01ORGcwc1BMdTI0UnZkeX
MxliwiZ29hbF93ZWlnaHQiOjE3MCwiY3VycmVudF93ZWlnaHQiOjI5Mn19.Ac5vP-4KtQ2oeMwRQ9
2MJGdpy9WGeoCmi6P4Bn9FxF7P-_wVVyWB5WzowdgqHrN_xbk0G8TtQkXT2aOOCWLpIHI7ACE
tHCBNr71Hnv3Sh7UlfXuVUJ6Pb-3mh3DiiEf43HOt4gjaWzujxbf5AgYDrFiBgEefXIwDsyMiSbWxz5h
5djWq&it=GTM
Status: 204
Source: Network
Address: 141.226.124.48:443
Initiator: index.js:62:458

FIRST AMENDED CLASS ACTION COMPLAINT

```
JSON    CLAIMS TABLE                                        COPY  ⤢

{
  "iss": "FuturHealth",
  "nbf": 1762199152,
  "exp": 1762202782,
  "iat": 1762199182,
  "checkout_data": {
    "disqualified": false,
    "email": "███████████@icloud.com",
    "full_name": ███████████,
    "months": 6,
    "moon_aff_id": "",
    "moon_offer_id": "smd-zepb-vial",
    "moon_session_id": "28TiFsQwWiVpoqEFBLCFtZ0NIfNdUaRN",
    "platform": "futurhealth_plus",
    "posthog_distinct_id": "019a0f37-3e38-7ef2-a71f-b4091186d3d9",
    "posthog_session_id": "019a3b9e-a581-7fb6-8282-28a355c62c1e",
    "product_id": "lillydirect-zepbound-split-monthly",
    "return_url": "https://plus.fh.co/account?surveySessionId=08450629
-a650-43d0-8cc0-218884250e82",
    "survey_session_id": "08450629-a650-43d0-8cc0-218884250e82",
    "user_id": "VKp9C5tN2dWMNDg0sPLu24Rvdys1",
    "goal_weight": 170,
    "current_weight": 292
  }
}
```

72.  The JWT encoding provides no privacy protection. Unlike encryption, base64url encoding is immediately and easily reversible by anyone who receives the tracking request.

73.  Accordingly, sensitive details about the user's health condition, medication regimen, and personal identifiers is exposed to Taboola in a human-readable format.

74.  The transmitted details combine identifiable markers including nae and email along with health details including pharmaceutical prescriptions and are therefore Private Information.

75.  At no point in the quiz process is the user presented with any disclosure, either explicit or constructive, that third party trackers may have been present on the site to record answers to these highly sensitive questions.

**IV.   REPRESENTATIVE PLAINTIFF'S EXPERIENCE.**

76.  Plaintiff Rebecca Hickey currently resides (and at all times herein

16

FIRST AMENDED CLASS ACTION COMPLAINT

relevant has resided) in New York, New York.

77. In or around October 2024, Plaintiff accessed the Website to seek weight loss treatment and compare the Website and its offerings to competitors.

78. During this visit, Plaintiff Hickey completed the initial qualification survey, which required her to input answers to sensitive questions about her health, including questions regarding previous surgeries, weight loss goals, and preexisting health conditions. She also entered her name, email address, and other personal information. However, she did not become a customer of Defendant during this visit as she sought to compare the Website and its offerings to competitors.

79. At no point before or during this process was Plaintiff Hickey provided with any notice or means to consent (*i.e.*, a link to Defendant's terms of use or privacy policy) to Private Information being recorded and intercepted by third parties. Nor was she provided with any notice that this recording and interception by third parties was taking place.

80. Plaintiff Hickey did not click on, view, or otherwise access any hyperlinks to Defendant's terms of use, privacy policy, or any similar page during the visit.

81. Plaintiff Hickey had not checked any box, clicked any button, or taken any other affirmative action indicating consent to be recorded or to have communications intercepted by Taboola or any other third party when she took the quiz.

82. Plaintiff Hickey was unaware at the time that her information was being intercepted in real time and disclosed to third parties such as Taboola.

83. Had she known that Defendant was using technologies to record and aid third parties in intercepting her answers to sensitive questions, Plaintiff Hickey would not have used the Website or would have limited the information provided.

84. As a result of Defendant's conduct, Plaintiff Hickey's privacy rights were violated, and Plaintiff Hickey suffered harm in the form of loss of control over her private mental health data, increased anxiety due to unknown parties accessing

17

FIRST AMENDED CLASS ACTION COMPLAINT

sensitive data, loss of the benefit of the bargain in keeping or exchanging her private data, and other harms related to the undisclosed and non-consenting transmission of Private Information.

## CLASS ACTION ALLEGATIONS

85. Plaintiff, on behalf of herself and all others similarly situated, seeks relief under Federal Rule of Civil Procedure 23 on behalf of the following classes (together the "Classes" or "Class and Subclass"):

**The Class:**

> All individuals who used the Website and had their electronic communications containing personal health information intercepted and transmitted to Taboola and/or any other third-party tracking tool embedded in the Website without their knowledge or consent.

**The New York Subclass**:

> All individuals residing in the State of New York who used the Website and had their electronic communications containing personal health information intercepted and transmitted to Taboola and/or any other third-party tracking tool embedded in the Website without their knowledge or consent.

86. The following people are excluded from the Classes: (i) any judge or magistrate presiding over this action and members of their families; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and their current or former officers and directors; (iii) persons who properly execute and file a timely request for exclusion from either or both Classes; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

87. Plaintiff reserves the right to revise or amend the definitions based on the

18

discovery of new information.

88. **<u>Numerosity</u>:** The exact number of members of the Classes is unknown but, upon information and good faith belief, it is estimated to number in the hundreds of thousands, and individual joinder of these claims is therefore wholly impracticable. Members of the Classes can be readily identified through Defendant's records and objective criteria and notice can be provided through techniques similar to those customarily used in other class action lawsuits.

89. **<u>Typicality</u>:** Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff *and* the members of the Classes sustained damages arising out of Defendant's wrongful conduct, misrepresentations, false statements, concealment, and unlawful practices, and Plaintiff and members of the Classes sustained similar injuries and damages, as a result of Defendant's uniform illegal conduct.

90. **<u>Adequacy</u>:** Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with or are antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

91. **<u>Commonality and Predominance</u>:** There are many questions of law and fact common to the claims of Plaintiff and the Classes and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not limited to the following:

    a. Whether Defendant violated the Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq.;

    b. Whether Defendant violated the California Invasion of Privacy Act, Cal. Penal Code § 631 *et seq.*;

    c. Whether Defendant violated the California Invasion of Privacy Act, Cal. Penal Code § 632 *et seq.*;

19

FIRST AMENDED CLASS ACTION COMPLAINT

d. Whether Defendant violated the New York Deceptive Trade Practices Act, NY GBL § 349 *et seq.*;

e. Whether Defendant's use of third-party tracking technologies is an unauthorized interception of electronic communications;

f. Whether Defendant unlawfully intercepted and manipulated user communications;

g. Whether Defendant was unjustly enriched by collecting and monetizing class members' protected health information;

h. Whether Defendant's practices violated healthcare privacy laws and regulations

i. Whether Defendant was unjustly enriched by intercepting class members' communications;

j. Whether Defendant's representations on the Website were deceptive;

k. Whether Plaintiff and Classes Members are entitled to damages and injunctive relief.

92. **Superiority:** There are substantial benefits to proceeding as a class action that render proceeding as a class action superior to any alternatives, including that class-wide adjudication will provide a realistic means for members of the Classes to receive monetary relief; the monetary relief suffered by members of the Classes may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Classes may be unaware that they have equitable recourse for the conduct alleged herein; and because issues common to members of the Classes can be effectively managed in a single proceeding. Plaintiff and her counsel know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

93. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance

20

FIRST AMENDED CLASS ACTION COMPLAINT

the disposition of this matter and the parties' interests therein. Such particular issues include:

    a. Whether Defendant aided and abetted the interception of electronic communications without consent in violation of CIPA;

    b. Whether Defendant's use of embedded software constitutes an interception of communications under CIPA;

    c. Whether Defendant obtained proper consent before recording users' interactions with the Website or recording users' information through the Website;

    d. Whether Defendant's actions violated Website visitors' reasonable expectations of privacy;

    e. Whether Defendant's collection of personal and medical information through tracking technology constitutes an invasion of privacy under the California Constitution; and

94. Finally, all members of the proposed Class and Subclass are readily ascertainable as Defendant has access to the Class and Subclass Members' names, emails, and physical addresses.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Penal Code § 631, *et seq.***
***(On Behalf of Plaintiff & the Class)***

95. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

96. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

California Penal Code § 631(a) establishes liability for any person who:

> [I]ntentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic

21

FIRST AMENDED CLASS ACTION COMPLAINT

communication system,

Or

[W]illfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

[U]ses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

[A]ids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

The California courts have consistently held that Section 631(a) is not limited to traditional telephone communications but applies broadly to modern electronic communications, including those transmitted via the Internet. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (holding CIPA applies to Internet communications).

97.	The California courts have specifically recognized that the use of software code to intercept and record a user's website communications, without the user's knowledge or consent, can constitute a violation of CIPA. *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021); *Javier v. Assurance IQ, LLC*, No. 20-16700, 2022 WL 1744107 (9th Cir. May 31, 2022).

98.	The technologies embedded on the Website, including Taboola, constitute a "machine, instrument, contrivance, or ... other manner" within the meaning of Section 631(a). This technology is specifically designed to intercept and record electronic communications between website users and the websites they visit.

99.	At all relevant times alleged herein, by implementing and using tracking technology on its website, Defendant:

    a.	Intentionally tapped, electrically or otherwise, the lines of internet

FIRST AMENDED CLASS ACTION COMPLAINT

communication between Plaintiff and Class Members on the one hand, and the Website on the other hand;

b. Willfully and without the consent of all parties to the communications, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and Class Members while those communications were in transit or passing over wires, lines or cables;

c. Used the information obtained through such unauthorized interception for its business purposes, including marketing optimization and lead generation; and

d. Aided, agreed with, employed, and conspired with third parties including Taboola to implement tracking technology and to accomplish the unauthorized interception of communications.

100. Plaintiff and Class members did not consent to any of Defendant's actions in implementing or using any tracking technology to intercept their communications through the Website. Specifically:

a. Defendant never obtained express consent from Plaintiff or Class members before intercepting their communications;

b. Defendant began aiding third parties in intercepting communications immediately upon a user's visit to the Website, before any opportunity to review terms of service or privacy policies;

c. Users were not presented with Defendant's Terms of Use or Privacy Policy during the initial survey process;

d. Defendant never provided clear, conspicuous notice that users' interactions with the Website would be recorded in their entirety and shared with a third party;

e. Any purported consent was ineffective because the interception began before consent could be obtained and because the disclosures were inadequate to inform users of the actual scope and nature of the

FIRST AMENDED CLASS ACTION COMPLAINT

interception.

101. The information intercepted includes sensitive personal data provided in the context of seeking healthcare, a transaction that by its nature involves the disclosure of Private Information.

102. Unless enjoined and restrained by this Court, Defendant will continue to commit these illegal acts. Plaintiff continues to desire to use the internet, including potentially the Website, to search for information about and shop for healthcare. However, Plaintiff has a reasonable fear that her communications will continue to be intercepted without her consent if she visits the Website again.

103. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class members are entitled to:

    a. A preliminary and permanent injunction prohibiting Defendant from continuing its unlawful conduct;

    b. Statutory damages of $5,000 per violation; and

    c. Any other relief the Court deems proper.

104. Plaintiff and the Classes members have suffered loss by reason of these violations, including but not limited to violation of their right to privacy.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Penal Code § 632, *et seq.***
***(On Behalf of Plaintiff & the Class)***

105. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

106. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

107. California Penal Code Section 632(a) provides that:

> [E]very person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except

24

FIRST AMENDED CLASS ACTION COMPLAINT

a radio, shall be punished[.]

108. California Penal Code Section 632(c) defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, or other public proceeding in which the public is entitled to attend, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

109. The communications between Plaintiff and Class members and the Website constitute "confidential communications" within the meaning of Section 632(c) because:

a. Plaintiff and Class members disclosed sensitive health information, including responses to screening questions regarding their weight, weight loss goals, previous surgeries, preexisting health conditions, and medication, along with personal identifiers such as their names, email addresses, and phone numbers, directly to Defendant through the Website while seeking healthcare treatment;

b. these one-on-one exchanges between each user and the Website were not made in a public gathering or in any legislative, judicial, or other public proceeding; and

c. Defendant never disclosed that Taboola or any other third party was embedded on the Website recording their responses, such that Plaintiff and Class members reasonably expected that their communications would not be overheard or recorded by any third party.

110. Defendant intentionally used an electronic recording device—specifically, Taboola embedded within the Website—to eavesdrop upon and record these confidential healthcare communications.

25

FIRST AMENDED CLASS ACTION COMPLAINT

111. The Taboola tracking technology constitutes an "electronic amplifying or recording device" within the meaning of Section 632(a) because it is specifically designed to capture, record, and transmit user interactions and communications in real-time for analytics and behavioral tracking purposes.

112. Defendant intentionally implemented and activated this recording technology within its Website with full knowledge that it would capture and record users' confidential healthcare communications, including their responses to sensitive health screening questions.

113. Defendant's recording of Plaintiff's and Class members' confidential healthcare communications was accomplished without the consent of all parties to the communication, specifically:

    a. Plaintiff and Class Members never consented to having their confidential healthcare communications recorded by third-party analytics companies;

    b. Defendant never obtained express consent before implementing the recording technology;

    c. Users were not informed that their healthcare communications would be recorded and transmitted to Taboola;

    d. No clear, conspicuous notice was provided regarding the scope and nature of the recording of confidential medical communications;

    e. The recording began immediately upon opening the Website, before users had any opportunity to review privacy policies or provide informed consent.

114. Defendant's conduct was undertaken intentionally and with knowledge that Taboola would record confidential healthcare communications without proper consent from all parties.

115. The confidential communications that were unlawfully recorded include highly sensitive protected health information that individuals provided with reasonable expectations of medical confidentiality and HIPAA protection.

26

FIRST AMENDED CLASS ACTION COMPLAINT

116. As a direct and proximate result of Defendant's violations of Section 632, Plaintiff and Class members have suffered harm including invasion of their privacy rights, violation of medical confidentiality, and loss of control over their sensitive health information.

117. Unless enjoined and restrained by this Court, Defendant will continue to commit these violations. Plaintiff and Class members have a reasonable fear that their confidential healthcare communications will continue to be unlawfully recorded if they use telehealth services through Defendant's platform.

118. Pursuant to California Penal Code Section 637.2, Plaintiff and Class members are entitled to:

   a. A preliminary and permanent injunction prohibiting Defendant from continuing its unlawful recording of confidential healthcare communications;

   b. Statutory damages of $5,000 per violation;

   c. Punitive damages for Defendant's willful and egregious violations of medical privacy; and

   d. Any other relief the Court deems proper.

119. Plaintiff and Class members seek all available remedies under California Penal Code Section 632 and related provisions for Defendant's unlawful recording of confidential healthcare communications.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### 18 U.S.C § 2510, *et seq.*
### *(On Behalf of Plaintiff & the Class)*

120. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

121. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

122. The ECPA protects both the sending and receipt of communications.

27

FIRST AMENDED CLASS ACTION COMPLAINT

123. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire, oral, or electronic communication is intercepted.

124. A violation of the ECPA occurs where any person:

[I]ntentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any…electronic communication" or "intentionally discloses, or endeavors to disclose, to any other person the contents of any… electronic communication, knowing or having reason to know that the information was obtained through the [unlawful] interception of a[n] … electronic communication" or "intentionally uses, or endeavors to use, the contents of any… electronic communication, knowing or having reason to know that the information was obtained through the [unlawful' interception of a[n] … electronic communication.

18 U.S.C. §§ 2511(1)(a), (c)-(d).

125. "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

126. "Electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

127. "Contents" includes "any information relating to the substance, purport, or meaning" of the communication at issue. 18 U.S.C. § 2510(8).

128. Whenever Plaintiff and Class Members interacted with the Website and completed health screening questionnaires, Defendant, through Taboola and other technologies it embedded in the Website, contemporaneously and intentionally intercepted the contents of Plaintiff's and Class members' electronic communications while those communications were in transmission, and redirected such contents to Taboola, a third party other than an addressee or intended recipient of such communication.

129. Whenever Plaintiff and Class Members interacted with the Website, Defendant, through Taboola, embedded and ran in its Website, contemporaneously and intentionally divulged the contents of Plaintiff's and Class members' electronic

28

FIRST AMENDED CLASS ACTION COMPLAINT

communications while those communications were in transmission, to Taboola, a third party other than an addressee or intended recipient of such communication.

130. Defendant intentionally intercepted and used the contents of Plaintiff's and Class members' electronic communications for unauthorized purposes including disclosing and, on information and belief, profiting from, Plaintiff's and Class members' health-related communications by transmitting the contents to Taboola for its and Taboola's marketing analytics and behavioral targeting purposes.

131. Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of sharing the sensitive health information contained therein with third parties such as Taboola.

132. Defendant's interception and disclosure of Plaintiff's and Class members' electronic communications containing protected health information violates HIPAA's criminal provisions, specifically 42 U.S.C. § 1320d-6, which makes it a crime to knowingly and in violation of HIPAA obtain or disclose individually identifiable health information.

133. Defendant intercepted Plaintiff's and Class members' electronic communications for purposes other than providing healthcare services to Plaintiff and Class Members without authorization or consent and knowing or having reason to know that the electronic communications were obtained in violation of the ECPA.

134. Defendant's interception of Plaintiff's and Class members' electronic communications was undertaken in furtherance of and to facilitate the commission of the crime of unlawful disclosure of protected health information under 42 U.S.C. § 1320d-6.

135. As a direct and proximate result of Defendant's violation of the ECPA, Plaintiff and Class Members were damaged by Defendant's conduct in that:

    a. Defendant harmed Plaintiff's and Class members' interest in privacy;

    b. Sensitive and confidential health information that Plaintiff and Class Members intended to remain private between them and their

29

FIRST AMENDED CLASS ACTION COMPLAINT

healthcare provider is no more;

   c. Defendant eroded the essential confidential nature of their relationship to Website users;

   d. Defendant took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class members' authorization, informed consent, or knowledge, and without sharing the benefit of such value;

   e. Plaintiff and Class Members did not get the full value of the healthcare services for which they paid or sought, which included Defendant's duty to maintain confidentiality; and

   f. Defendant's actions diminished the value of Plaintiff's and Class members' personal health information.

136. Plaintiff, individually and on behalf of the Class members, seeks all monetary and non-monetary relief allowed by law, including actual damages, statutory damages, punitive damages, preliminary and other equitable or declaratory relief, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT
### NEW YORK GEN. BUS. LAW § 349, *et seq.*
### *(On Behalf of Plaintiff and the New York Subclass)*

137. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

138. By the acts and conduct alleged herein, Defendant committed deceptive acts and practices by:

   a. promising to maintain the privacy and security of Plaintiff's and New York Subclass Members' PHI as required by law;

   b. enabling the Taboola Pixel to operate as intended and transmit Plaintiff's and New York Subclass Members' Private Information without their authorization to Taboola;

30

FIRST AMENDED CLASS ACTION COMPLAINT

    c. failing to disclose or omitting material facts to Plaintiff and New York Subclass Members regarding the disclosure of their Private Information to Taboola;

    d. failing to take proper action to ensure the Pixel was configured to prevent unlawful disclosure of Plaintiff's and New York Subclass Members' Private Information;

    e. unlawfully disclosing Plaintiff's and New York Subclass Members' Private Information to Taboola.

139. These acts and practices violated duties imposed by laws, including but not limited to, the Federal Trade Commission Act, HIPAA and NY GBL § 349.

140. Defendant's actions also constitute deceptive acts or practices because Defendant knew it failed to disclose to Plaintiff and New York Subclass Members that their healthcare-related communications via the Website would be disclosed to Taboola. Futurhealth also knew that its alleged failure to disclose this would be materially misleading to reasonable consumers under the circumstances, and that its disclosures to consumers were inadequate.

141. Defendant's actions also constitute deceptive acts and practices because Defendant intended that Plaintiff and New York Subclass Members rely on its deceptive acts and practices. As Defendant intended, Plaintiff and New York Subclass Members reasonably believed their healthcare-related communications and Private Information via the Web Properties would be maintained confidentially and not disclosed to third parties like Taboola for advertising and marketing purposes.

142. These deceptive acts and practices occurred in the course of Defendant's business of offering and providing telehealth services and weight management products through the Website.

143. Defendant's deceptive acts and practices were consumer-oriented, as they were directed at consumers seeking weight management solutions and telehealth services.

FIRST AMENDED CLASS ACTION COMPLAINT

144. Defendant's deceptive acts and practices were material in that a reasonable consumer would consider them important in deciding whether to use the Website and disclose their Private Information. No reasonable consumer would knowingly allow their sensitive health information, prescription medication details, and medical histories to be shared with advertising platforms like Taboola.

145. Defendant's conduct was likely to mislead reasonable consumers acting reasonably under the circumstances. Consumers seeking telehealth services have a reasonable expectation that their medical information will be kept confidential consistent with traditional healthcare privacy standards.

146. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and New York Subclass Members have suffered injury in fact and actual damages, including:

    a. Loss of the value of their Private Information;

    b. Diminished value of the services for which they paid;

    c. Loss of privacy;

    d. Exposure to targeted advertising based on their health conditions;

    e. Increased risk of identity theft and discrimination;

    f. Emotional distress and anxiety.

147. Defendant's deceptive acts and practices were willful and knowing, as Defendant deliberately configured and deployed the Taboola Pixel on its Website with knowledge that it would capture and transmit users' Private Information.

148. Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff and New York Subclass Members are entitled to damages in an amount to be determined at trial, along with their costs and attorneys' fees incurred in this action.

### FIFTH CAUSE OF ACTION
#### UNJUST ENRICHMENT
#### (*On Behalf of Plaintiff & the Class*)

149. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

32

FIRST AMENDED CLASS ACTION COMPLAINT

150. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

151. Defendant has been unjustly enriched at the expense of Plaintiff and Class Members through its unauthorized collection, use, and monetization of their protected health information and personal data.

152. Plaintiff and Class Members conferred a benefit upon Defendant by providing valuable protected health information, including sensitive mental health data, medical histories, and personal identifiers, through their use of the Website.

153. Individual health records command premium prices in data markets, valued as much as 50 times more than credit card information due to their comprehensive nature and permanence.

154. Mental health information commands exceptional value due to its predictive power and marketing utility.

155. Defendant received and retained this benefit by intercepting, collecting, and transmitting Plaintiff's and Class members' protected health information to Taboola through embedded technology without authorization or consent.

156. Defendant has been unjustly enriched through several mechanisms:

    a. Data Monetization: Defendant derives commercial value from sharing users' protected health information with third-party analytics companies like Taboola for marketing analytics, behavioral targeting, and user profiling purposes;

    b. Cost Avoidance: Defendant avoided the substantial costs of obtaining proper consent, implementing adequate privacy protections, and securing lawful access to this valuable health data;

    c. Competitive Advantage: Defendant gained unfair competitive advantages by leveraging detailed health data profiles to optimize its platform and marketing without bearing the costs associated with compliant data collection.

FIRST AMENDED CLASS ACTION COMPLAINT

d.  Enhanced Platform Value: The unauthorized collection of comprehensive user health data increases the overall value and effectiveness of Defendant's telehealth platform.

157. Defendant obtained this benefit through unlawful interception and unauthorized disclosure of protected health information in violation of HIPAA, ECPA, and CIPA.

158. Plaintiff and Class Members provided this valuable information in the context of seeking confidential healthcare services with a reasonable expectation of privacy and HIPAA compliance, which Defendant actively concealed its data collection and sharing practices from users who were unaware their health information was being intercepted and monetized despite marketing itself as a "HIPAA-compliant" healthcare service.

159. Defendant's retention of these benefits violates fundamental principles of fairness and equity, as Defendant has profited from the unauthorized exploitation of some of the most sensitive and valuable personal information—protected health information—without providing any compensation or benefit to the individuals whose privacy was violated.

160. Plaintiff and Class Members have no adequate remedy at law for Defendant's unjust enrichment, as they cannot recover the specific value of their appropriated health data through traditional damages calculations.

161. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Class Members are entitled to restitution and disgorgement of all benefits, profits, and value that Defendant has obtained through the unauthorized collection and use of their protected health information.

162. Plaintiff and Class Members seek judgment requiring Defendant to disgorge all profits, benefits, and value obtained through its unlawful conduct, together with interest thereon, and such other relief as the Court deems just and proper.

34

FIRST AMENDED CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rebecca Hickey, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment against Defendant Futurhealth, Inc. and in favor of Plaintiff and the Classes, and grant the following relief:

A.  Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel for the Class and New York Subclass;

B.  Enter a judgment finding that Defendant's actions, as described herein, violate the Electronic Communications Privacy Act (18 U.S.C. §2510 *et seq.*) and California Invasion of Privacy Act (Cal. Penal Code § 631-32).

C.  Award injunctive and other equitable relief as necessary to protect the interests of Plaintiff and the Classes including:

    i.  An order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.  An order requiring Defendant to implement proper notice and consent mechanisms before using tracking technology;

    iii.  An order requiring Defendant to destroy all data collected through unlawful monitoring practices;

D.  Award statutory damages of $5,000 for each violation of Cal. Penal Code § 631;

E.  Award statutory damages to Plaintiff and the Classes under the Electronic Communications Privacy Act, 18 U.S.C. § 2520(c)(2), in the amount of the greater of $100 per day for each day of violation or $10,000 per violation, or actual damages

35

FIRST AMENDED CLASS ACTION COMPLAINT

and any profits made by Defendant, whichever is greater;

F.    Award statutory damages for each violation of N.Y. Gen. Bus. Law § 349 to Plaintiff and members of the New York subclass;

G.    Award restitution and disgorgement of Defendant's unjust enrichment, including all revenue derived from its unlawful business practices;

H.    Award Plaintiff and the Classes reasonable litigation expenses and attorneys' fees;

I.    Award Plaintiff and the Classes pre- and post-judgment interest to the extent allowable; and

J.    Award such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

Dated: June 12, 2026

Respectfully submitted,

/s/ Victor J. Sandoval
Victor J. Sandoval (SBN 344461)
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd., Suite 1121
Los Angeles, California 90034
t: (562) 534-5907
victor@almeidalawgroup.com

David S. Almeida*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: (708) 529-5418
david@almeidalawgroup.com

*Admitted *pro hac vice*

*Attorneys for Plaintiff & the Putative Classes*

36

FIRST AMENDED CLASS ACTION COMPLAINT