James F. Monagle, SBN 236638
Edgar F. Navarrete, SBN 322662
MULLEN COUGHLIN LLC
500 Capitol Mall, Suite 2350
Sacramento, CA 95814
Telephone: (267) 930-1529
Email: jmonagle@mullen.law;
enavarrete@mullen.law

Attorney for Defendant,
FUTURHEALTH, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

REBECCA HICKEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

FUTURHEALTH, INC.,

Defendants.

**CASE NO. 3:25-CV-03051-H-DDL**

*Assigned to the Hon. Marilyn L. Huff*

**DEFENDANT FUTURHEALTH, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, COMPEL ARBITRATION**

**Date:** October 5, 2026
**Time:** 10:30 a.m.
**Location:** James M. Carter and Judith N. Keep Courthouse, Courtroom 1210, 12th Floor
333 West Broadway
San Diego, CA 92101

Date Filed: November 7, 2025
Trial Date: None Set

## NOTICE OF MOTION

**TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on October 5, 2026 at 10:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Marilyn L. Huff, in the United States District Court for the Southern District of California, James M. Carter and Judith N. Keep United States Courthouse, Courtroom 1210, located at 333 West Broadway, San Diego, CA 92101, Defendant, FUTURHEALTH, INC. ("FuturHealth"), will, and hereby does, respectfully move this honorable Court for an order dismissing the Plaintiff's Amended Class Action Complaint in this action.

This Motion is made on the grounds that the Plaintiff, REBECCA HICKEY, ("Plaintiff") lacks Article III Standing to sue FuturHealth because they have not alleged an injury-in-fact, and Plaintiff has not alleged sufficient facts to state a claim under any of the causes of action pled against FuturHealth. It is therefore proper to dismiss the Amended Class Action Complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Alternatively, FuturHealth seeks to compel arbitration of any surviving claims pursuant to the valid and enforceable arbitration agreement between Plaintiff and FuturHealth.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the accompanying Declaration of Sabrina Burgi, all pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Date: August 10, 2026

**MULLEN COUGHLIN, LLC**

/s/James F. Monagle
James F. Monagle
Edgar F. Navarrete
Attorneys for Defendant,
FUTURHEALTH, INC

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. LEGAL STANDARDS .......... 3

A. Federal Rule of Civil Procedure 12(b)(1) .......... 3

B. Federal Rule of Civil Procedure 12(b)(6) .......... 4

IV. LEGAL ARGUMENTS .......... 4

A. Plaintiff Lacks Standing to Bring Claims Against FuturHealth .......... 4

a. Plaintiff's Allegations of Harm Are Properly Contested as False, And Cannot Be Credited or Confer Article III Standing .......... 4

B. Plaintiff Fails to Allege Violation of Cal. Penal Code § 631(a) .......... 7

a. Plaintiff's Communications with FuturHealth Are Subject to Party Communications Exemption .......... 8

b. Plaintiff failed to allege FuturHealth Aided or Abetted Taboola's violation of section 631(a) 9

c. Taboola is not a Third-Party Eavesdropper and Cannot be Held Liable under section 631(a)12

C. Plaintiff Fails to Allege Violation of Cal. Penal Code § 632 .......... 14

a. Plaintiff Does Not Plausibly Allege Any "Confidential Communication" Necessary to Sustain a § 632 Claim .......... 14

b. Count II Fails § 632 Does Not Apply to Internet Communications .......... 15

D. Plaintiff Fails to Allege Violation the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2510 .......... 16

a. Plaintiff's ECPA Claim Fails because FuturHealth Was the Intended Party Recipient of the Communications .......... 16

b. The Crime-Tort Exception is Inapplicable .......... 16

E. Plaintiff Fails to Allege Violation N.Y. Gen. Bus. Law § 349 .......................... 17

F. Plaintiff Fails to Allege Unjust Enrichment ...................................................... 19

G. Motion to Compel Arbitration ........................................................................ 20

a. Plaintiff Unambiguously Accepted FuturHealth's Terms and Conditions When She Completed the Online Questionnaire ..................................... 20

b. Arbitration Agreements Are Favored and Enforceable ........................... 21

c. FuturHealth's Binding Terms of Use Constitute a Valid Clickwrap Agreement to Arbitrate and Are Enforceable against Plaintiff................ 22

d. Plaintiff's Claims Fall Within the Arbitration Agreement's Scope......... 23

e. Proceedings Must be Stayed Pending Completion of Arbitration ........... 24

V. CONCLUSION ........................................................................ 24

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Bradshaw v. Lowe's Companies, Inc.*, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986) .......... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... 22, 23

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) .......... 22, 23

*Brodsky v. Apple Inc.*, 445 F.Supp.3d 110 (N.D. Cal. 2020) .......... 19

*Brown v. Google LLC*, 685 F.Supp.3d 909 (N.D. Cal. 2023) .......... 15

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 5

*Campbell v. Facebook, Inc.*, 77 F.Supp.3d 836 (N.D. Cal. 2014) .......... 14, 15

*Chabolla v. Classpass Inc.*, 129 F.4th 1147 (9th Cir. 2025) .......... 22

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) .......... 3

*City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458 (2022) .......... 19

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 9

*Cullors v. Cerebral, Inc.*,
2024 WL 3385530 (9th Cir. July 12, 2024) .......... 22, 23

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 21

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 7, 8, 10, 11

*Doe v. Talkiatry Mgmt. Servs., LLC,*
2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) .......... 17

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 14

*Friends of the Earth v. Sanderson Farms, Inc*.,
992 F.3d 939 (9th Cir. 2021) .......... 4

*Gomez- Jimenez v. New York Law School*,
956 N.Y.S.2d 54 (2012) .......... 18

*Gomez-Jimenez v. New York L. Sch.*,
943 N.Y.S.2d 834 (Sup. Ct.) .......... 18

*Graham v. Noom, Inc*.,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 12, 13

*Gudgel v. Clorox Co*.,
514 F.Supp.3d 1177 (N.D. Cal. 2021) .......... 19

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) .......... 9

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 10

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 7

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ............ 7

*In re Unite Here Data Sec. Litig.*,
740 F.Supp.3d 364 (S.D.N.Y. 2024) ............ 18

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............ 6

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ............ 13

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 ............ 5, 6

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal.4th 95 ............ 14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ............ 17

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) ............ 21

*Lee v. Nature's Path Food, Inc.*,
2023 WL 7434963 (S.D. Cal. Nov. 9, 2023) ............ 19

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ............ 3

*Licea v. Cinmar, LLC*,
659 F.Supp.3d 1096 (C.D. Cal. 2023) ............ 9

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ............ 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............ 4

*Martin v. Meredith Corp.*,
657 F.Supp.3d 277 (S.D.N.Y. 2023) ............ 17

*NovelPoster v. Javitch Canfield Grp.*,
140 F.Supp.3d 938 (N.D. Cal. 2014) ........ 16

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20, 647 N.E.2d 741 (1995) ........ 18

*Peralta v. Certified Emp. Screening Inc.,*
2025 WL 1723142 (C.D. Cal. May 7, 2025) ........ 19

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ........ 19

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 16, 17

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 6

*Price v. Converse, Inc.,*
2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) ........ 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 3

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ........ 4

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) ........ 2

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 19

*Spokeo v. Robins*,
578 U.S. 330 (2016) ........ 4

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 3

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 16, 17

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 8, 14, 15

*Troy v. Am. Bar Ass'n*,
2024 WL 1886753 (E.D.N.Y. Arp. 30, 2024) .......... 18

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 9

*Warren v. Fox Fam. Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) .......... 3

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) .......... 10

*Williams v. What If Holdings, LLC,*
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 9

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) .......... 6, 16

**Statutes**

9 U.S.C. § 2 .......... 21

9 U.S.C. § 3 .......... 24

18 U.S.C. § 2510 .......... 16

18 U.S.C. § 2511 .......... 16

Cal. Civil Code § 1798.100 .......... 10, 11

Cal. Pen. Code § 631 .......... Passim

Cal. Pen. Code § 632 .......... 2, 14, 15, 16

NY GBL § 349 .......... 1, 17, 18

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 2, 4

Fed. R. Civ. P. 12(b)(1) .......... 2, 3

## I. INTRODUCTION

This is Plaintiff Rebecca Hickey's ("Plaintiff") second attempt to plead an injury-in-fact that she did not suffer. On May 14, 2026, this Court dismissed Plaintiff's initial Complaint, Dkt. 1 ("Comp."), because her allegations failed to demonstrate a concrete injury-in-fact. *See* Dkt. 23 ("MTD Order") 7:3-5. Plaintiff's First Amended Complaint, Dkt. 24 ("FAC") relies on claims that Defendant FuturHealth, Inc. ("FuturHealth") sent her personal information to a third-party software provider named Taboola[1] after she provided questionnaire responses on FuturHealth's website while seeking weight loss treatment options. *See* FAC ¶¶ 66–68, 77-78, 81-82.

However, Plaintiff alleges she only visited FuturHealth's website once, in October 2024 – a time when FuturHealth incontestably was not using Taboola. *See* FAC ¶ 77; Declaration of Sabrina Burgi ("*Burgi Decl.*") at ¶¶ 5-6. By presenting evidence refuting Plaintiff's unsupported (and false) allegations regarding FuturHealth's temporal use of Taboola, FuturHealth properly challenges Plaintiff's Article III standing based on a lack of injury-in-fact, and "has converted the motion to dismiss into a factual motion" such that Plaintiff now "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citation omitted).

---

[1] Importantly, Plaintiff relies *__exclusively__* on FuturHealth's alleged use of Taboola. *See* FAC ¶¶ 37-74 (alleging details regarding FuturHealth's alleged use of Taboola on its website); 81-82 (alleging Plaintiff visited the website when it used Taboola); 98-99 (Count 1 alleging the use of Taboola violates CIPA Section 631(a)); 110-111, 113-114 (Count 2 alleging the use of Taboola violates CIPA Section 632); 128-131 (Count 3 alleging the use of Taboola violates the ECPA); 138-141, 144-147 (Count 4 alleging the use of Taboola violates NY GBL § 349); and 155-156 (Count 5 alleging the use of Taboola constitutes Unjust Enrichment). To the extent the FAC makes a single generic reference to "advertising platforms and data analytics companies such as … Facebook and Google" or otherwise references "others [sic] possible third-party interceptors" besides Taboola, the use by FuturHealth of any technologies other than Taboola is not plausibly pled. *See* FAC ¶¶1, 60.

Because Plaintiff has already been afforded an opportunity to amend and will be unable to establish through evidence (as required) that she suffered any injury-in-fact when she visited the website, she lacks Article III standing, and this Court must dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) with prejudice.

The FAC also asserts five causes of action: (1) Violation of Cal. Pen. Code § 631(a); (2) Violation of Cal. Pen. Code § 632; (3) Violation of the Electronic Communications Privacy Act ("Wiretap Act"); (4) Violation of the New York Deceptive Trade Practices Act ("NYDTPA"); and (5) unjust enrichment. Despite the amended allegations, Plaintiff fails to adequately plead any claims upon which relief can be granted, and these causes of action must be dismissed. Fed. R. Civ. P. 12(b)(6).

Alternatively, the Court should compel arbitration of any surviving claims pursuant to an enforceable arbitration agreement between Plaintiff and FuturHealth.

## II. STATEMENT OF FACTS

FuturHealth is a subscription-based telehealth and wellness platforms that offers consumers weight-loss program services and products, including prescriptions for glucagon-like peptide-1 ("GLP-1") medications used for weight loss. *See* FAC ¶¶ 32-34. Plaintiff alleges she accessed FuturHealth's website[2] (the "Website") in October 2024 and *completed* an online initial qualification survey, wherein she voluntarily disclosed information about her health, including previous surgeries, weight loss goals and health conditions to FuturHealth. *Id.* ¶¶ 77-78. However, Plaintiff alleges she "did not become a customer" and only accessed FuturHealth's website to compare FuturHealth's products and services with those offered by its competitors. *Id.* ¶ 78.

Plaintiff alleges that unbeknownst to her, FuturHealth employed Taboola on the Website, and surreptitiously collected and transmitted her personally identifiable information ("PII") and protected health information ("PHI") to Taboola. *Id.* ¶¶ 1, 81-82. Plaintiff generally alleges Taboola develops "tracking and analytics tools" (*Id.* ¶ 39) which enabled the collection of data voluntarily disclosed by users on the Website

[2] www.fh.co

to assist FuturHealth with tracking activity on their Website including purchases, sign-ups, add-to-cart events, and content views. *See id.* ¶¶ 37-59. Plaintiff alleges she was not provided notice or means to consent to tracking technologies on the Website and she did not view the terms of use or privacy policy available on the Website. *Id.* ¶¶ 79-80. Consequently, Plaintiff alleges she suffered harm, including violation of her privacy rights, loss of control over "private mental health data," increased anxiety, loss of the benefit of the bargain, and other unspecified harms. *Id.* ¶ 84.

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

If a plaintiff lacks standing under Article III, an action must be dismissed for lack of subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998). A party may challenge a plaintiff's standing by bringing a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010). "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotations omitted). By contrast, in a factual attack on jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and the court need not presume the truthfulness of the plaintiff's allegations. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Moreover, when "the existence of jurisdiction turn[s] on disputed factual issues," (i.e., evidence-backed disputes) the court may "resolve those factual disputes" where necessary. *See Friends of the Earth v. Sanderson Farms, Inc*., 992 F.3d 939, 944 (9th Cir. 2021) (citation and internal quotation marks omitted).

**B. <u>Federal Rule of Civil Procedure 12(b)(6)</u>**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, a complaint must allege a factual basis for each element of each cause of action. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Dismissal without leave to amend is proper where the complaint cannot be saved by amendment, and the court's discretion to deny leave is "particularly broad" where the plaintiff previously amended. *Salameh v. Tarsadia Hotel,* 726 F.3d 1124, 1133 (9th Cir. 2013).

## IV. <u>LEGAL ARGUMENTS</u>

**A. <u>Plaintiff Lacks Standing to Bring Claims Against FuturHealth</u>**

To satisfy the Article III standing requirement, a plaintiff must plausibly plead three elements: (1) that the plaintiff suffered an "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

To allege an injury in fact, a plaintiff must plead "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Spokeo v. Robins,* 578 U.S. 330, 339 (2016) (internal quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a *personal and individual way*.' *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1) (emphasis added).

a. <u>Plaintiff's Allegations of Harm Are Properly Contested as False, And Cannot Be Credited or Confer Article III Standing</u>

Plaintiff claims that FuturHealth's use of Taboola tracking software violated her privacy rights. *See* FAC, ¶¶ 37-74; 77, 82, 84, 104, 116, 135, 146, 159. However, as noted above, FuturHealth has submitted evidence establishing that it was not using

Taboola at the time Plaintiff allegedly visited FuturHealth's website. *Compare* FAC, ¶ 77 (alleging Plaintiff visited the website in October 2024) *with Burgi Decl*., at ¶¶ 5-6 (establishing FuturHealth was not using Taboola at that time). Because Plaintiff's allegations of harm rely *exclusively* on FuturHealth's alleged use of Taboola, it follows that: **No Foul** (i.e., use of Taboola), **No Harm** (or Article III standing).

Although Plaintiffs' mere allegations cannot be credited when facing contrary evidence, it is worth noting that no allegations regarding Taboola's functionality actually reference Plaintiff's experience when she visited the website. For example, Plaintiff does not allege *her* survey responses were encoded on a JWT transmitted to Taboola. *See* FAC, at ¶¶ 66-67. Likewise, the screenshot that Plaintiff alleges reveals personal information including "users['] full name, email address, [and] sensitive health information," is inexplicably redacted such that it cannot be credited as pertaining to Plaintiff. *See id,* at ¶71. Thus, Plaintiff's allegations "lack the requisite specificity to indicate the existence of a legally protected privacy interest or a sufficiently serious breach thereof," *Jones v. Tonal Sys., Inc.,* 751 F. Supp. 3d 1025, 1043 (S.D. Cal. 2024).

Otherwise, Plaintiff alleges four discrete harms: (1) "loss of control over her private mental health data"; (2) "increased anxiety due to unknown parties accessing sensitive data"; (3) "loss of the benefit of the bargain"; and (4) unspecified "other harms." *Id.*, ¶ 84. These allegations are not sufficient to confer standing.

In order to establish standing based on an alleged privacy injury, a plaintiff must demonstrate that the purportedly disclosed information is sufficiently sensitive to implicate a protectable privacy interest. *Byars v. Sterling Jewelers, Inc.,* No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023). Courts determine if impacted information implicates a protectable privacy interest "based on the nature of the information at issue." *In re Yahoo Mail Litig.,* 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014).

The Ninth Circuit held that, in "web tracking" cases, establishing an injury-in-fact at the pleading stage requires a plaintiff to allege harm that would be "*highly offensive to the reasonable man*." *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (emphasis added). In *Popa*, the Ninth Circuit affirmed dismissal for lack of standing where the complaint "[did] not explain how the tracking of her interactions with the [defendant's] website caused her to experience any kind of harm that [was] remotely similar to the '*highly offensive'* interferences or disclosures that were actionable at common law." *Id.* at 791. (emphasis added).

Since the Ninth Circuit's ruling in *Popa*, courts in "web tracking" cases have determined plaintiffs lack standing when they fail to plausibly allege a violation of a traditional common law privacy tort. *See Price v. Converse, Inc.,* No. 24-cv-08091-FLA (Ex), 2025 WL 3295119, at *3 (C.D. Cal. Sept. 30, 2025); *see also Bradshaw v. Lowe's Cos., Inc.*, No. 25cv0742 DMS (MMP), 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025). Moreover, in order to demonstrate highly offensive information is at issue, "*plaintiffs must allege specific private information upon which a defendant intruded*, such that a court can analyze whether the sharing of that information plausibly constituted an egregious breach of social norms." *Wright v. TrueCare Prop. Holdings, LLC*, No. 3:25-CV-00786-JES-BLM, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) (emphasis added); *see also Jones,* 751 F. Supp. 3d at 1043 (sparing references to the nature of plaintiff's communications with defendant's website "lacked the requisite specificity to indicate the existence of a legally protected privacy interest or a sufficiently serious breach thereof.")

Although Plaintiff alleges "her privacy rights were violated", FAC ¶ 84, Plaintiff's allegations fail to articulate the invasion of a recognizable privacy interest that could possibly imbue Plaintiff with Article III standing to bring any of her claims. Specifically, the four purportedly distinct harms alleged in the FAC do not suffice. *See* FAC ¶ 84. For example, the FAC first alleges Plaintiff "los[t] of control over her private *mental health* data", *Id.* (emphasis added), yet this conclusory statement is not

plausibly pled, and is belied by other allegations regarding the actual information Plaintiff says she provided to FuturHealth, namely her weight-loss goals. *See Id.* ¶¶ 64, 78. The FAC does not otherwise implicate mental health information. Plaintiff then alleges anxiety resulting from "unknown parties accessing sensitive data." *Id.*, ¶ 84. However, anxiety or emotional distress can only qualify as a concrete injury when they are "based on a risk of harm that is either "certainly impending" or "substantial." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022). Plaintiff's allegations do not suggest certain or imminent harm is pending.

Nor does Plaintiff's third conclusory allegation regarding "loss of the benefit of the bargain in keeping or exchanging her private data" involve harm associated with any traditional privacy-based tort, but rather suggests contractual harm. *See* FAC ¶ 84. Indeed, the FAC contains no other allegations addressing this alleged "bargain" or any related "benefit." Courts have also dismissed claims based on a "benefit of the bargain" theory where the Plaintiffs did not pay defendant or incur any monetary losses. *See In re Google Assistant Priv. Litig.,* 457 F. Supp. 3d 797, 834 (N.D. Cal. 2020) ("it cannot be said that Plaintiffs received less than what they paid for [when they] paid nothing"); Indeed, Plaintiff alleges she never became FuturHealth's customer. *See* FAC ¶ 78.

Finally, Plaintiff's fourth and final vague reference to "other harms" does not describe a concrete or particularized injury. Accordingly, Plaintiff has failed to plead an injury-in-fact and the FAC must be dismissed for lack of standing.

**B. <u>Plaintiff Fails to Allege Violation of Cal. Penal Code § 631(a)</u>**

Section 631(a) of CIPA contains four distinct clauses which are independent bases for liability. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1114 (N.D. Cal. 2025). The first three prohibited behaviors are summarized as (1) intentional wiretapping of a telegraph or telephone wire, (2) attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in activities prohibited under (1) or (2). *See Id.* The fourth prohibited behavior under section 631(a) is aiding or

conspiring any person in violating one of the first three clauses. *See Id.*; Cal. Penal Code § 631(a).

The first clause of 631(a) is not applicable here because it only pertains to telephone and telegraph communications, and courts have universally held it does not apply in the context of internet or website activity. *See Eating Recovery*, 806 F. Supp. 3d at 1115 (citing *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (collecting cases)). The third clause requires a violation of one of the first two clauses and a subsequent misuse of illegally obtained information. *See* Cal. Pen. Code § 631(a). The second clause penalizes anyone "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . at any place within this state." *Id.* Therefore, in order to have a viable claim under section 631(a) against FuturHealth, Plaintiff had to allege a third-party, in this case Taboola, violated CIPA's second clause, and that FuturHealth "aided and abetted" Taboola in said violation.

Plaintiff's cause of action under section 631(a) fails on at least three separate grounds. First, FuturHealth cannot be held directly liable for violating 631(a)'s first three clauses because any communications between Plaintiff and FuturHealth are subject to the "party communications" liability exemption. Second, Taboola cannot be considered a third-party eavesdropper under applicable law, and therefore is subject to the party exemption as well. Third, the allegations in the FAC demonstrate the communications were not read, attempted to be read, or learned by Taboola while they were "in transit," leaving no predicate violation of section 631(a) for FuturHealth to aid and abet.

a. <u>Plaintiff's Communications with FuturHealth Are Subject to Party Communications Exemption</u>

The first three subparts of CIPA's Section 631(a) are subject to a party exception. *Licea v. Cinmar, LLC*, 659 F.Supp.3d 1096, 1106 (C.D. Cal. 2023); *see also Williams*

*v. What If Holdings, LLC,* No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("Parties to a conversation cannot eavesdrop on their own conversation . . . [defendant]'s liability is therefore based entirely on whether [a third party] violated Section 631(a)"). Here, the FAC alleges Plaintiff provided her information to FuturHealth by "complet[ing] the initial qualification survey", which required her to input . . . her name, email address, and other personal information." *Id.* at ¶ 78. Moreover, Plaintiff "disclosed sensitive health information . . . *directly to Defendant* through the Website." *Id.* at ¶ 109 (emphasis added).

b. <u>Plaintiff failed to allege FuturHealth Aided or Abetted Taboola's violation of section 631(a)</u>

"A defendant cannot be liable for aiding and abetting another party in violation of this clause absent a predicate violation of Section 631(a)'s first three clauses." *Gutierrez v. Converse Inc.*, No. CV 23-6547-KK-MARX, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024); *see also Cody v. Ring LLC,* 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (District Court dismissed claim under section 631(a)'s fourth clause where plaintiff failed to establish "underlying third-party violation" of the preceding clauses).

Accordingly, the Plaintiff must allege facts demonstrating a third party, in this case Taboola, violated section 631(a)'s second clause by "read[ing], or attempt[ing] to read, or [learning] the contents or meaning of any message, report, or communication while the same is in transit" and that FuturHealth aided and abetted Taboola.

*1. Plaintiff does not allege communications on the Website were "intercepted" or "read" while "in transit"*

To claim that Taboola violated section 631(a)'s second clause, Plaintiff had to allege Taboola "*read or learned* the contents of a communication *while the communications were in transit*, or in the process of being sent or received." *Valenzuela v. Super Bright LEDs Inc.*, No. EDCV2301148JAKSPX, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (emphasis added). The "in transit" requirement means the interception occurred "in real time," i.e. the third party intercepted the communications the instant Plaintiff transmitted their communications

on the FuturHealth's website. *See Heiting v. Taro Pharms. USA, Inc.,* 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). "To plausibly allege that Plaintiff's communications were intercepted while in transit entails alleging facts demonstrating the alleged interception occurred *instantaneously*. *See id.* at 1125 (allegations describing a "two-step, sequential process" "d[id] not satisfy Section 631(a)'s "in transit" requirement that Plaintiff's messages be intercepted at the time Plaintiff transmitted them to Defendant.") (emphasis added). Moreover, "the phrase 'reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication' in CIPA requires some effort at understanding the substantive meaning of the message, report or communication." *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024).

The Northern District Court carefully analyzed the interpretation of this requirement and determined that analytics tools like those at issue here do not capture information while "in transit." *See Eating Recovery*, 806 F. Supp. 3d at 1117. In fact, the *Eating Recovery* Court was skeptical whether CIPA applies to Internet communications and websites at all:

> [T]here is reason to question whether the Legislature intended for CIPA to apply to the type of conduct implicated by this case at all. Recall that CIPA was enacted in 1967. Its language—with words like "read" and "intercept" and "in transit"—is *ill-suited for application to internet communications*. The Legislature has never, in over four decades, amended Section 631 to adapt its language to the digital age. And California has since adopted other statutes that more clearly speak to the practice of data sharing. *See* Cal. Civil Code § 1798.100 *et seq.* (California Consumer Privacy Act).
>
> …
>
> Did the Legislature really intend to subject companies like [Defendant] to criminal liability for using third-party software to track website activity? Did it really mean to criminalize the use of web traffic data? Given the statute's ambiguity and its imposition of criminal liability, perhaps courts should not be so quick to assume that the answer is yes.

*Id.* at 1118–19 (emphasis added).[3]

Despite its reservations, the *Eating Recovery* Court assumed CIPA could generally apply, and analyzed the "in transit" requirement but noted the statute is a criminal statute and therefore must be construed narrowly and be read in the Defendant's favor under the Rule of Lenity. *Id.* Though *Eating Recovery* was a civil case, "the interpretations courts adopt while adjudicating those actions could affect the extent to which people or companies are subject to criminal liability" and therefore the Court determined it *required strict construction*. *Id.* (collecting cases). Following that principle, the Court first determined that to be "in transit" the communication must be intercepted while traveling "from the person sending the communication to its intended recipient" i.e. between the user and website owner. *Id.* at 1117. Thus even data transmitted *almost* instantaneously is not captured "in transit" if the interception occurs after receipt by the website owner. *See id.* (finding that 0.2 seconds of difference destroys the "in transit" requirement).

Following the logic established by *Taro Pharms.* and *Eating Recovery Ctr.,* Plaintiff's 631(a) cause of action fails. The alleged process described by Plaintiff's FAC demonstrates the communications were not intercepted while "in transit." Instead, the FAC alleges that "[Futurhealth] transmits the user's responses to Taboola *after* each and every page of the quiz", which indicates FuturHealth transmits data *after* it is in their possession. *See* FAC ¶ 67 (emphasis added). More specifically, the FAC alleges that "*after* each quiz page that a user completes and submits, the user's cumulative responses are encoded in a JSON Web Token (JWT) that is appended to the URL of the next page in the quiz flow, and that JWT is transmitted to Taboola via the Taboola pixel embedded on that page . . . "[these] encoded URLs are transmitted *after* each passed page." *Id.* ¶ 67 (emphasis added). Instead of an "in transit" interception, the FAC describes a multi-step process wherein website users first provide their responses

---

[3] *Eating Recovery* ruled on a motion for summary judgment. However, the Court's analysis focused on the interpretation of CIPA's statutory language.

on Website quiz pages which are received by FuturHealth, then encoded into a web token (including responses from prior pages), and Taboola's pixel could only read that token after the user moves to a subsequent quiz page. This alleged sequence describes an after-the-fact disclosure of data, not an instantaneous "in transit" reading or learning. Because the FAC establishes Taboola did not violate section 631(a), it follows that FuturHealth could not have aided and abetted a violation of section 631(a).

c. <u>Taboola is not a Third-Party Eavesdropper and Cannot be Held Liable under section 631(a)</u>

Plaintiff's claims are also barred because Taboola is a vendor that provides analytics tools to assist FuturHealth with its marketing and advertising efforts therefore Taboola was not a third-party eavesdropper under section 631(a). Rather, Taboola was a "party" to Plaintiff's alleged communications with FuturHealth and therefore, like FuturHealth, cannot be found liable for violating CIPA. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021).

Courts have recognized the party exception, which allows a "party to a communication" to record or intercept its own communications, applies to third-party vendors, like Taboola, who provide analytics tools to website operators. *See, e.g., id.* at 831-33 (holding that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself."); *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (finding *Graham* analysis dispositive of CIPA claims where "Plaintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site").

A leading case on this topic, *Graham v. Noom*, analyzed a similar theory and held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself." 533 F. Supp. 3d at 832.

Rather, the vendor operated as "an extension of Noom," the website operator, offering "a tool . . . that allows *Noom* to record and analyze *its own data*[.]" *Id.* (emphases added). The same analysis necessitates dismissal here. The FAC alleges Taboola's tracking software was embedded on the Website at the direction of FuturHealth. *See* FAC ¶ 60 (alleging that FuturHealth "made the conscious and intentional decision to install Taboola within its Website"). Further, the FAC describes the benefits that Taboola's software provided website operators, in this case FuturHealth—i.e., by allowing FuturHealth to track website traffic and track action such as purchases, sign-ups, add-to-cart events, etc. *See id.* ¶¶ 40-41. Plaintiff describes Taboola's tracking software as "tracking and analytics *tools*" throughout the FAC. *See id.* ¶¶ 39, 85. Plaintiff's Section 632 claim expressly concedes the point by alleging that Taboola is an "electronic recording device" that *Defendant* "used." *See* ¶ 110-11. A recording device is not an eavesdropper, and a complaint that pleads the vendor as the operator's instrument pleads itself out of CIPA claim. *See Graham*, 533 F. Supp. 3d at 832–33. Accordingly, Plaintiff has not pled that Taboola acted as anything more than an extension of FuturHealth.

Plaintiff may attempt to argue Taboola is not an extension of FuturHealth because it has the "capability to use" alleged communications for any independent purpose. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). However, the Plaintiff's claim fails under this rubric as well for the same reason – they are conclusory and fail to plead eavesdropping with the requisite specificity. The FAC's allegations do not indicate Taboola acts as anything but a service provider for FuturHealth. At most, Plaintiff conclusively alleges the information captured by Taboola's tracking technology is used for "the platform's independent purposes." FAC ¶ 58. The subsequent paragraph hypothesizes that Taboola's tracking technology "creates an environment where sensitive user data <u>*can*</u> be easily collected and transmitted to Taboola's servers", *id.* ¶ 59, however these conjectural allegations do

not demonstrate Taboola did in fact collect information for its own use. Accordingly, Plaintiff's CIPA claim under section 631(a) must be dismissed.

**C. <u>Plaintiff Fails to Allege Violation of Cal. Penal Code § 632</u>**

A claim under CIPA's section 632(a) requires: (1) an intentional act; (2) use of an electronic amplifying or recording device"; (3) to eavesdrop upon or record; (4) a "confidential communication"; (5) without the consent of *all* parties. *See* Cal. Penal Code § 632(a); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774–76 (2002). The Plaintiff's second cause of action fails because the Complaint does not plausibly allege any "confidential communication" under Section 632, and Section 632 does not apply to internet communications.

a. <u>Plaintiff Does Not Plausibly Allege Any "Confidential Communication" Necessary to Sustain a § 632 Claim</u>

"California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of CIPA's section 632, because such communications can easily be shared by . . . the recipient(s) of the communications." *Campbell v. Facebook, Inc*., 77 F.Supp.3d 836, 849 (N.D. Cal. 2014) (internal quotation omitted). This is based on the California Supreme Court's determination that a conversation is only "confidential" under Section 632 "if a party to that conversation has an objectively reasonable expectation that the conversation *is not being overheard or recorded*." *Id.* (quoting *Kearney v. Salomon Smith Barney, Inc*., 39 Cal.4th 95, 117 n.7) (emphasis added). Accordingly, courts have developed a collective presumption that internet communications "do not give rise to the requisite expectation of confidentiality" under Section 632 and, for example, claims that "consumers "cannot be expected to know" that chat conversations with [commercial websites] are generally recorded is objectively unreasonable." *Swarts*, 689 F.Supp.3d at 747.

Plaintiff's FAC does nothing to rebut this presumption. Though Plaintiff alleges, without further explanation, that her communications were "confidential" within the

meaning of Section 632(c), *see* FAC ¶ 109(a)-(c), the "standard of confidentiality is an objective one defined in terms of reasonableness." *Brown v. Google LLC*, 685 F.Supp.3d 909, 936 (N.D. Cal. 2023) (citation omitted). In *Brown,* the plaintiffs argued they reasonably believed their web-based communications were confidential because they used "Incognito Mode" on their web browser. *Id* at 936–37. Here, FAC presents no allegations underlying an objectively reasonable belief in the "privacy" of Plaintiff's communication with FuturHealth's website. Unlike in *Brown,* the FAC alleges nothing comparable – no privacy setting, no representation Plaintiff visited the website in "Incognito Mode," and no circumstances suggesting her quiz responses would go unrecorded. After all, it would be unreasonable for a consumer submitting responses to a marketing quiz on a commercial website to expect their responses would not be recorded by the website. The FAC alleges Plaintiff never became a customer and visited the website only "to compare the Website and its offerings to competitors." FAC ¶¶ 77–78. No reasonable consumer browsing and comparing weight-loss products across multiple websites would expect such price-shopping expeditions to carry the confidentiality of a medical consultation. Accordingly, Plaintiff's communications with FuturHealth's website were not "confidential" as a matter of law, and her Section 632 claim fails. *See Campbell*, 77 F. Supp. 3d at 849.

b. <u>Count II Fails § 632 Does Not Apply to Internet Communications</u>

The statutory text of Section 632(a) makes clear that it is inapplicable to Plaintiff's communication through FuturHealth's website. *Swarts*, 689 F.Supp.3d at 747 ("A plain reading of the text itself makes clear that the statute only applies to communications transmitted by telephone, not internet."). Indeed, the statute explicitly requires the communication be "by means of a *telegraph, telephone, or other device*, except a radio." Cal. Penal Code § 632(a) (emphasis added). Plaintiff does not allege any communication by telegraph, telephone, or any other similar device. Thus, on these grounds alone Plaintiff's section 632(a) cause of action should be dismissed.

**D. Plaintiff Fails to Allege Violation the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2510**

The federal Wiretap Act provides for civil penalties where a person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2551(1)(a). An analysis for violation of the Wiretap Act is analogous to an analysis pertaining to the violation of CIPA. *NovelPoster v. Javitch Canfield Grp*., 140 F.Supp.3d 938, 954 (N.D. Cal. 2014).

a. Plaintiff's ECPA Claim Fails because FuturHealth Was the Intended Party Recipient of the Communications

For the same reasons described above with respect to Plaintiff's first cause of action, *see supra*, p. 9-10, FuturHealth's status as an intended recipient of Plaintiff's communication shields FuturHealth from liability under the ECPA. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135 (9th Cir. 2022) ("a person may record a conversation in which he or she is a party"). Accordingly, the party exception under the ECPA involves the same analysis as the party exception under CIPA. *See Wright*, 2025 WL 3248749, at *3 ("For both claims, under the party-exception rule, an intended party to a communication is exempt from liability").

b. The Crime-Tort Exception is Inapplicable

The party-exception rule generally applies unless the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511. This is known as the crime-tort exception. However, a recording has a *criminal or tortious purpose* under § 2511(1) only when "done for the purpose of facilitating some further impropriety, such as blackmail." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). The crime-tort exception fails where there is no "further impropriety" that is "separate and independent" from the alleged interception. *See Planned Parenthood*, 51 F.4th at 1135- 36 (crime or tort exception did not apply when

the purpose of the recording was the same as the purpose of the criminal or tortious act); *see, e.g., Doe v. Talkiatry Mgmt. Servs., LLC,* No. 5:25-CV-00781-SSS-DTBX, 2025 WL 3190813, at *4 (C.D. Cal. Oct. 1, 2025) ("Various courts have held that a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication *for the purpose* of a tortious or criminal act that is independent of the intentional act of recording or interception itself.") (emphasis added).

Plaintiff's allegations fail to allege there existed a nefarious intent by FuturHealth to commit a crime behind their alleged interception of Plaintiff's information. Instead, Plaintiff rely on the circular argument by alleging the interception was "was undertaken in furtherance of and to facilitate the commission of the crime of unlawful disclosure." FAC ¶ 134. Where there is no further impropriety other than the alleged interception Courts have generally dismissed such claims. *See Sussman*, 186 F.3d at 1202–03 ("Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.")

Furthermore, as discussed in relation to Plaintiff's CIPA claim, the Plaintiff fails to adequately plead key elements of his ECPA claim, including that the alleged interception took place while "in transit". *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (Federal Wiretap Act requires interception during "transmission"). Plaintiff's ECPA claim must be dismissed.

**E. <u>Plaintiff Fails to Allege Violation N.Y. Gen. Bus. Law § 349</u>**

To bring a NYDTPA claim, a plaintiff must plausibly allege (1) that the defendant's acts were directed at consumers, (2) the acts were misleading in a material way, and (3) the plaintiff has been injured as a result. *Martin v. Meredith Corp.*, 657 F.Supp.3d 277 (S.D.N.Y. 2023) (dismissing NYDTPA claim based on alleged "web tracking" conduct because plaintiff's conclusory allegations of "deceptive" actions were insufficient). "[A] plaintiff must allege that defendant's consumer-oriented, deceptive acts or practices "resulted in actual injury to the plaintiff." *Gomez-Jimenez*

*v. New York L. Sch.*, 943 N.Y.S.2d 834, 841 (Sup. Ct.), (2012). Here, Plaintiff failed to plausibly allege the second and third element of this cause of action.

To claim violation of the NYDTPA, a plaintiff must describe how alleged acts or omissions were, in fact, deceptive or misleading, and "must set forth where, when and how [the plaintiff] came to view" any allegedly misleading statement. *In re Unite Here Data Sec. Litig.*, 740 F.Supp.3d 364, 387 (S.D.N.Y. 2024) (quoting *Troy v. Am. Bar Ass'n*, 2024 WL 1886753, at *6 (E.D.N.Y. Arp. 30, 2024)). To the extent the NYDTPA claim is premised on alleged omissions, such a theory depends on the objective likelihood the omissions will "mislead a reasonable *consumer* acting reasonably under the circumstances." *Gomez- Jimenez v. New York Law School*, 956 N.Y.S.2d 54, 58 (2012) (emphasis added). In *Unite Here*, the court held plaintiffs did not allege actual injury caused by defendant when plaintiffs conceded they had never viewed or relied upon a website's privacy policy. *See* 740 F.Supp.3d at 387

Although Plaintiff alleges FuturHealth "promis[ed] to maintain the privacy and security of Plaintiff's and New York Subclass Members' PHI", *see* FAC 138(a), Plaintiff also alleges she never actually viewed FuturHealth's "terms of use, privacy policy, or any similar page." FAC ¶ 80. Instead, Plaintiff simply conclusively labels FuturHealth's alleged conduct as misleading and deceptive but fails to describe what particular acts were misleading or how they could mislead a reasonable consumer. *See id.* ¶¶ 141-47. Accordingly, Plaintiff's allegations negate any possible inference that FuturHealth made any materially misleading statement to Plaintiff.

Finally, the NYDTPA is a *consumer* protection law and Section 349(h) requires *actual* injury; deception alone, or "loss of the value" of data untethered to any transaction, does not suffice. *See* N.Y. Gen. Bus. Law § 349(h); *See Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 25, 647 N.E.2d 741 (1995) ("A prima facie case requires as well a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof.") Here, Plaintiff alleges she never was a consumer

as she did not pay FuturHealth for any services because she never became a customer. *See* FAC ¶ 78. Plaintiff cannot allege FuturHealth's alleged deceptive conduct resulted in actual damages. Accordingly, Plaintiff's cause of action must be dismissed.

F. **<u>Plaintiff Fails to Allege Unjust Enrichment</u>**

Unjust enrichment is not an independent cause of action recognized by California courts. *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477-78 (2022) ("There is no cause of action in California labeled 'unjust enrichment.'")*; Perez v. Romantix Online, Inc.*, No. 25-CV-02465-NW, 2025 WL 3085786, at *4 (N.D. Cal. Oct. 27, 2025) (dismissing unjust enrichment claim because "unjust enrichment is not a cause of action") (citation omitted). Though some courts have construed a form of unjust enrichment action as a "quasi-contract" action, *see Brodsky v. Apple Inc*., 445 F.Supp.3d 110, 133–34 (N.D. Cal. 2020), Plaintiff does not adequately allege the existence of a quasi-contractual relationship.

Because the remedy for a successful unjust enrichment claim is restitution, a plaintiff must allege the Court has equitable jurisdiction over their claim by showing that Plaintiff lacks an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020). Accordingly, where unjust enrichment claims are allowed to persist, courts require plaintiffs explain how they lack an adequate legal remedy. *Peralta v. Certified Emp. Screening Inc.,* No. 8:24-CV-02779-FWS-KES, 2025 WL 1723142, at *6 (C.D. Cal. May 7, 2025) ("[E]quitable relief is not appropriate where an adequate remedy exists at law.") (internal quotations omitted)). Moreover, where an unjust enrichment claim "rise[s] and fall[s] with [the] statutory claims," it must be dismissed. *Lee v. Nature's Path Food, Inc*., No. 23-cv-00751-H-MSB, 2023 WL 7434963, at *6 (S.D. Cal. Nov. 9, 2023) (Huff, J.) (citing *Gudgel v. Clorox Co*., 514 F.Supp.3d 1177, 1188 (N.D. Cal. 2021)).

Plaintiff conclusively alleges they "have no adequate remedy at law for Defendant's unjust enrichment, as they cannot recover the specific value of their appropriated health data through traditional damages calculations." FAC ¶ 160. This

is contradicted by the various statutory claims alleged in the FAC. Plaintiff cannot pick-and-choose between the remedies: either she is entitled to legal remedies or she is not. The potential for a remedy at law forecloses Plaintiff's unjust enrichment claim.

### G. Motion to Compel Arbitration

Plaintiff's claims are all subject to a mandatory arbitration agreement to which Plaintiff consented when she visited the Website and voluntarily filled out the questionnaire. Like all other Website users who completed the questionnaire in October 2024, Plaintiff was presented with a conspicuous hyperlink notice to FuturHealth's Terms of Use. Those Terms of Use prominently included an agreement to arbitrate and described the agreement's terms in detail. Further, upon completing her questionnaire as she alleges she did, Plaintiff would have been prompted to check a box directly next to the hyperlinked Terms of Use, explicitly acknowledging her agreement to be bound by those Terms of Use. These actions by Plaintiff created an enforceable "clickwrap" arbitration agreement, and Plaintiff's claims all fall subject to that agreement. Thus, the Court should compel arbitration if any claims survive FuturHealth's Motion to Dismiss.

a. Plaintiff Unambiguously Accepted FuturHealth's Terms and Conditions When She Completed the Online Questionnaire

Plaintiff alleges she accessed the FuturHealth website and completed an online questionnaire in October 2024. FAC ¶¶ 77-78. A user who began and completed FuturHealth's questionnaire in October 2024 as Plaintiff alleges she did would have potentially encountered a notice and acknowledgement of FuturHealth's Terms of Use twice (at the outset and conclusion of the questionnaire). *Burgi Decl*. at ¶¶ 9-10. Otherwise, upon completing the questionnaire and before seeing any prescription plan results, users like Plaintiff in October 2024 would have received the following prompt on the screen:

> I understand my information is kept 100% confidential and agree to the terms of service and privacy policy.

*Id.* at ¶¶ 11. Directly next to this statement was a box, which Plaintiff may have had to manually click to "check," thus signaling her agreement. *Id.* To view potential prescription plans based on her questionnaire responses, Plaintiff would have clicked the "See My Results" button directly below this prompt. *Id.*

The words "terms of service" contained a hyperlink to FuturHealth's then-applicable Terms of Use. *Burgi Decl.* at ¶ 12. By clicking on that hyperlink, a website user would be taken to a separate web page containing that document. *Id.* The first page of that Terms of Use explicitly stated:

> Binding Arbitration. These Terms of Use provide that all disputes between you and FuturHealth that in any way relate to these Terms of Use, the Platform, and/or the Services will be resolved by BINDING ARBITRATION. ACCORDINGLY, YOU AGREE TO GIVE UP YOUR RIGHT TO GO TO COURT (INCLUDING IN A CLASS ACTION PROCEEDING) to assert or defend your rights under these Terms of Use. Your rights will be determined by a NEUTRAL ARBITRATOR and NOT a judge or jury and your claims cannot be brought as a class action.

*Id.* at ¶ 15 (emphasis in original). Section 23 of the Terms of Use then contained a detailed description of the Arbitration Agreement's terms. *Id.* at ¶¶ 16-18.

b. <u>Arbitration Agreements Are Favored and Enforceable</u>

The Federal Arbitration Act ("FAA") reflects a clear federal policy requiring courts to rigorously enforce agreements to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985). The FAA provides that a "written provision in any [] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Courts do not have discretion in enforcing arbitration agreements. The FAA mandates that courts shall "direct to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011). A motion to compel arbitration "should not be denied unless it may be said *with positive assurance* the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*" *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (internal quotations omitted) (emphasis added). Courts must compel arbitration where they determine that the two "gateway" issues of arbitration are satisfied: (1) a valid arbitration agreement, and (2) a dispute covered by the arbitration agreement. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

c. FuturHealth's Binding Terms of Use Constitute a Valid Clickwrap Agreement to Arbitrate and Are Enforceable against Plaintiff

Plaintiff is bound by the agreement to arbitrate in FuturHealth's Terms of Use. The Ninth Circuit has held that arbitration agreements formed through a website interaction are enforceable where there is: (1) reasonably conspicuous notice to the user of terms and conditions; and (2) unambiguous manifestation of assent by the user to be bound to those terms and conditions, typically through some action like clicking a button or checking a box indicating assent. *Cullors v. Cerebral, Inc.*, No. 23-55594, 2024 WL 3385530, at *1 (9th Cir. July 12, 2024); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Such online arbitration agreements are known as "clickwrap" agreements. *See id*.

In evaluating "reasonably conspicuous notice," courts must consider the "context of the entire transaction, including the font size, text placement, and overall screen design of the notice. *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1154–55 (9th Cir. 2025). Here, the notice provided to Plaintiff upon her completion of the online questionnaire was reasonably conspicuous because: (1) Plaintiff was presented with a large button labeled "See My Results"; (2) directly above that button was easily-legible text reading: "I understand my information is kept 100% confidential and agree to the terms of service and privacy policy," and Plaintiff was required to manually check a box next to this statement to make the "See My Results" button accessible and advance to the next web page containing her prescription plan; (3) the words "terms of service" contained a hyperlink readily apparent by an underline on those words (and not on the

surrounding words); and (4) the Terms of Use contained an extensive explanation of mandatory arbitration. *See Cullors*, 2024 WL 3385530 at *1 (affirming grant of motion to compel arbitration based on presence of these four factors). Unambiguous consent to an arbitration agreement exists where a website user is "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 856. This is exactly what happened with Plaintiff. Plaintiff alleges she completed the questionnaire on FuturHealth's website for the purpose of seeking weight loss treatment. FAC ¶ 78. She could not have advanced to view prescription plans without encountering and clicking the box next to FuturHealth's conspicuous notice of its Terms of Use. Thus, Plaintiff unambiguously agreed to the Terms of Use and manifested assent to arbitrate this dispute.

Further, incorporation of the AAA Rules into an arbitration agreement constitutes "clear and unmistakable evidence" that the parties intended to delegate questions of arbitrability—beyond the existence of an enforceable contract—to the arbitrator. *Brennan.* 796 F.3d at 1130. FuturHealth's Terms of Use explicitly incorporated the AAA Rules and stated the arbitrator must decide all issues "relating to the scope and enforceability of these Terms of Use." *See Burgi Decl.* at ¶ 14; Exhibit A at § 23. Thus, the Court should follow the arbitration agreement's explicit delegation language and need not proceed further in its analysis.

d. <u>Plaintiff's Claims Fall Within the Arbitration Agreement's Scope</u>

Even if the Court were to analyze the subject matter covered by the arbitration agreement, Plaintiff's claims fall squarely within its scope. The Terms of Use require arbitration of "any dispute, claim, or controversy arising out of or relating in any way to these Terms of Use or *your use* of the Platform[.]" *See* Exhibit A to *Burgi Decl.* at p. 1. The Terms of Use includes "our Websites" within the definition of "the Platform." *Burgi Decl.* at ¶ 16. Plaintiff's claims arise from her alleged use of the Website. *See* FAC ¶¶ 77-78. This dispute falls within the scope of the arbitration agreement.

e. Proceedings Must be Stayed Pending Completion of Arbitration

The FAA requires the Court stay all proceedings if requested by any party while a ruling on compelling arbitration is pending and, if the Court orders arbitration, until arbitration is complete. 9 U.S.C. § 3 ("upon being satisfied that the issue involved… is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such has been had in accordance with the terms of the agreement…"). Because this matter is subject to arbitration, the Court should issue a stay pending the conclusion of arbitration proceedings.

## V. CONCLUSION

Based on the above-discussed law and facts, FuturHealth respectfully requests that this Court dismiss Plaintiff's First Amended Complaint. If any claims survive FuturHealth's dispositive motion, FuturHealth requests the Court stay the litigation to allow the parties to arbitrate any remaining claims.

Date: August 10, 2026

**MULLEN COUGHLIN, LLC**

/s/James F. Monagle
James F. Monagle
Edgar F. Navarrete
Attorneys for Defendant,
FUTURHEALTH, INC

## CERTIFICATE OF SERVICE

I hereby certify that, on August 10, 2026, I electronically filed the foregoing DEFENDANT FUTURHEALTH, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, COMPEL ARBITRATION with the United States District Court for the Southern District of California by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

Date: August 10, 2026

**MULLEN COUGHLIN, LLC**

/s/James F. Monagle
James F. Monagle
Edgar F. Navarrete
Attorneys for Defendant,
FUTURHEALTH, INC